# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

GENERAL STAR NATIONAL INSURANCE COMPANY,

*Plaintiff-Appellant,*

*v.*

MDLV, LLC D/B/A ONE SOTHEBY'S INTERNATIONAL REALTY, *et al.*,

*Defendant -Appellees.*

Appeal from the United States District Court
for the Southern District of Florida

No. 1:21-cv-24284-FAM

## INITIAL BRIEF FOR APPELLANT
## GENERAL STAR NATIONAL INSURANCE COMPANY

Sabina Danek
Anthony D'Agostino
David Wilford
Wilford LLP
18-6 E. Dundee Road, Suite 150
Barrington, Illinois 60010
224-848-4721

Cindy Ebenfeld
Hicks, Porter, Ebenfeld & Stein, P.A.
11011 Sheridan Street, Suite 104
Hollywood, Florida 33026
954-624-8700

*Attorneys for Appellant General Star National Insurance Company*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

In compliance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, counsel for Appellant shows that the following trial judge(s), attorneys, persons, associations of persons, firms, partnerships, and corporations have an interest in the outcome of this appeal:

1. Belchenko, Esq., Olesia Y.

2. Berkshire Hathaway Inc. – NYSE: BRK.A

3. Budnik, Esq., Carolyn N.

4. Carolyn N. Budnik, PLLC

5. D'Agostino, Esq., Anthony J.

6. Danek, Esq., Sabina B.

7. Ebenfeld, Esq., Cindy L.

8. General Re Corporation

9. General Reinsurance Corporation

10. General Star National Insurance Company

11. Goodman, Jonathan, Magistrate Judge

12. Gudaitis, Esq., Christine A.

13. Heliac, Inc.

14. Hicks, Porter, Ebenfeld & Stein, P.A.

15. Klioner, Gleb

16. Marino, Jr., Esq. Stephen A.

17. Moreno, Frederico A., United States District Judge

18. MDLV, LLC d/b/a One Sotheby's International Realty

19. Olesia Y. Belchenko, P.A.

20. Rocha, Esq., Alessia A.

21. Stadnikov, Kirill

22. Ver Ploeg & Marino, P.A.

23. Wilford, Esq., David A.

24. Wilford LLP

25. Zorina, Tatiana

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument in this proceeding. This appeal presents important questions of Florida insurance law pertaining to the interpretation of exclusionary clauses. This appeal also involves a future value exclusion, which has not been interpreted by any court in this Circuit. If the District Court's ruling is allowed to stand, such exclusions will be rendered virtually meaningless. The opportunity to address these issues in greater detail and to respond to inquiries from this Court may aid the Court in its decision-making process.

# TABLE OF CITATIONS

For ease of reference, names and details have been abbreviated as follows:

**Parties:**

General Star National Insurance Company is referred to as "General Star."

Gleb Klioner is referred to as "Klioner."

Heliac, Inc. is referred to as "Heliac."

MDLV, LLC d/b/a One Sotheby's International is referred to as "One Sotheby's."

**Other:**

Real Estate Errors and Omissions Liability Insurance Policy No. NJA363443A issued by General Star to One Sotheby's is referred to as the "Policy."

Exclusion A(2) of the Policy, which precludes coverage for Claims "if based on or arising out of … Any disputes involving any Insured's … conversion … of funds[,]" is referred to as the "Conversion Exclusion."

Exclusion A(16) of the Policy, which precludes coverage for Claims "if based on or arising out of … Any guarantee or promise of future status, performance or valuation in the course of performing Professional Services by the Insured[,]" is referred to as the Future Value Exclusion.

The condominium located at 9701 Collins Avenue, Unit 502S, Bal Harbour, Florida is referred to as the "St. Regis Condo."

The underlying lawsuit filed by Heliac against One Sotheby's and Klioner in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, bearing Case No. 2022,001943 CA 43, is referred to as the "Heliac Lawsuit."

The alleged difference between the market price of the St. Regis Condo and the sale price is referred to as the "Market Value Damages."

Citations to Appellant's Appendix are referred to as "App.__ (D.E. __, p. __)."

# **TABLE OF CONTENTS**

Certificate of Interested Persons and Corporate Disclosure Statement ................C-1

Statement Regarding Oral Argument .......................................................i

Table of Citations ....................................................................... ii

Table of Contents ....................................................................... iii

Table of Authorities .....................................................................v

Jurisdictional Statement ............................................................. viii

Statement of the Issues .................................................................1

Statement of the Case ..................................................................2

    I.       Course of Proceedings Below ...................................................3

    II.      Statement of Facts .......................................................5

             A. The Heliac Complaint ...................................................5

             B. The General Star Policy ............................................11

             C. The Report and Recommendation ..................................12

    III.     Standard of Review ......................................................15

Summary of the Argument ..........................................................16

Argument ..............................................................................19

    I.       Coverage is Barred by the Conversion Exclusion ..................................21

             A. The Conversion Exclusion Broadly Extends to Any
               Claims Arising Out of *Any Disputes Involving* an Insured's
               Conversion ...................................................21

B. The Conversion Exclusion is Intended to Be
Broadly Applied as Written .........................................................25

C. The Heliac Complaint is Not "Fairly Read" as
Alleging that Klioner's Misrepresentations were
Independent of the Conversion Scheme ......................................27

D. The Market Value Damages are Not Alleged as a
Separate and Independent Claim..................................................29

II.    Coverage is Barred by the Future Value Exclusion ................................31

A. Klioner's Alleged Assurances Regarding Future
Market Conditions and Property Value are Unquestionably
"Promises" or "Guarantees" .........................................................31

        i.  Klioner's Alleged Statements are "Promises" ...................32

        ii.  Klioner's Alleged Statements are "Guarantees" ...............37

        iii.  Klioner's Alleged Statements Trigger
             the Future Value Exclusion  ...............................................38

B. Limiting the Future Value Exclusion to Statements
Regarding Discernable Facts Renders the Exclusion
Meaningless....................................................................................39

Conclusion  ............................................................................................43

Certificate of Compliance  .....................................................................44

Certificate of Service  ............................................................................45

# TABLE OF AUTHORITIES

**Cases**

*Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.*,
    771 So. 2d 579 (Fla. 4th DCA 2000) ......................................20, 39

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..........................................15

*Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29 (Fla. 2000) .............................42

*Boule v. Pike Indus.*, No. 5:12-cv-7,
    2013 U.S. Dist. LEXIS 26588 (D. Vt. Feb. 27, 2013) ........................... 32-33

*Chalfonte Condo. Apartment Ass'n Inc. v. QBE Ins. Corp.*,
    561 F.3d 1267 (11th Cir. 2009) ....................................................15

*Colorado Boxed Beef Co. v. Evanston Ins. Co.*,
    No. 8:18-cv-1237-T-02JSS, 2018 U.S. Dist. LEXIS 217936
    (M.D. Fla. Dec. 27, 2018) ............................................24, 29, 30
    772 Fed. App'x 850 (11th Cir. 2019) ........................................30

*Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*,
    711 So. 2d 1135 (Fla. 1998) ......................................................40

*Dillon v. Champion Jogbra, Inc.*, 819 A.2d 703 (Vt. 2002) ............................33, 34

*Francis v. State*, 808 So. 2d 110 (Fla. 2001) ..........................................24

*Fun Spree Vacations, Inc. v. Orion Ins. Co.*,
    659 So. 2d 419 (Fla. 3d DCA 1995) ................................................19, 20, 29

*Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc.*,
    874 So. 2d 26 (Fla. 2d DCA 2004) .............................................33

*Goldstein v. Miles*, 859 A.2d 313 (Md. Ct. App. 2004) ................................32, 35

*\*Authorities upon which we chiefly rely are marked with asterisks.*

v

*Grissom v. Commercial Union Ins. Co.*,
610 So. 2d 1299 (Fla. 1st DCA 1992) ........................................................20

*Hagen v. Aetna Cas. & Sur. Co.*,
675 So. 2d 963 (Fla. 5th DCA 1996) ..................................................... 40-41

*Hartford Accident & Indem. Co. v. Beaver*,
466 F.3d 1289 (11th Cir. 2006) ..................................................................20

*Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367 (11th Cir. 1998) ..................15

*Horowitch v. Diamond Aircraft Indus., Inc.*,
645 F.3d 1254 (11th Cir. 2011) ..................................................................19

*Houston Specialty Ins. Co. v. Fenstersheib*,
--- F. Supp. 3d ---, No. 20-60091-CIV-ALTMAN/Hunt,
2022 U.S. Dist. LEXIS 179241 (S.D. Fla. Sep. 30, 2022) ...................22, 23

*James River Ins. Co. v. Ground Down Eng'g, Inc.*,
540 F.3d 1270 (11th Cir. 2008) .............................................................20, 42

*Jones v. Florida Ins. Guar. Ass'n*, 908 So. 2d 435 (Fla. 2005) .............................19

*Keen v. Fla. Sheriffs' Self-Ins. Fund*,
962 So. 2d 1021 (Fla. 4th DCA 2007) .......................................................19

*Morris v. Am. Freightways, Inc.*, No. 4:01-cv-40475,
2002 U.S. Dist. LEXIS 16050 (S.D. Iowa Aug, 20, 2002) ........................33

*Perez v. Wells Fargo N.A.*, 774 F.3d 1329 (11th Cir. 2014) ..................................15

*Scott v. Taylor*, 405 F.3d 1251 (11th Cir. 2005) ....................................................15

*Schenley v. Kauth*, 122 N.E. 189 (Ohio 1953) .........................................35, 36, 41

*St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*,
572 F.3d 893 (11th Cir. 2009) ...................................................................15

*\*Authorities upon which we chiefly rely are marked with asterisks.*

*Star Title Partners of Palm Harbor, LLC v. Illinois Union Ins. Co.*,
    No. 21-13343, 2022 U.S. App. LEXIS 24930 (11th Cir. Sep. 6, 2022) ......24

*State v. Elder*, 975 So. 2d 481 (Fla. 2d DCA 2007) ................................................24

*State Bank of Standish v. Curry*, 500 N.W.2d 104 (Mich. 1993) ..........................35

*State Farm Fire & Cas. Co. v. Tippett*,
    864 So. 2d 31 (Fla. 4th DCA 2003) .......................................................19, 20

*Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*,
    913 So. 2d 528 (Fla. 2005) .............................................................20, 21, 22

*Thomas v. Prudential Prop. & Cas.*,
    673 So. 2d 141 (Fla. 5th DCA 1996) .....................................................20, 29

*Wooley v. Lucksinger*, 961 So. 2d 1228 (La. Ct. App. 2007) ................................35


**Statutes**

28 U.S.C. § 1291 ............................................................................................ viii

28 U.S.C. § 1332 ............................................................................................ viii


**Rules**

Fed. R. Civ. P. 56(c) ............................................................................................15


**Other Authorities**

*"Guarantee," Merriam-Webster's Online Dictionary,
https://www.merriam-webster.com/dictionary/guarantee ......................................37

*"Promise," Merriam-Webster's Online Dictionary,
https://www.merriam-webster.com/dictionary/promise ...........................32, 34, 35

*Authorities upon which we chiefly rely are marked with asterisks.*

# JURISDICTIONAL STATEMENT

The District Court had diversity jurisdiction under 28 U.S.C. § 1332. General Star National Insurance Company ("General Star") is a Delaware corporation with its principal place of business in Connecticut. MDLV, LLC d/b/a One Sotheby's International ("One Sotheby's") is a Florida limited liability company with its principal place of business in Florida. The sole member of One Sotheby's is Daniel De La Vega, who is a Florida citizen and domiciled in Florida. Heliac, Inc. ("Heliac") is a Florida corporation having its principal place of business in Florida. Upon information and belief, Gleb Klioner ("Klioner") is a Florida citizen, domiciled in Florida.

One Sotheby's was sued by Heliac in connection with the alleged conversion of the proceeds of a real estate transaction in excess of $3.7 million. One Sotheby's sought coverage under its insurance policy with General Star, which has a limit of liability of $3 million. The amount in controversy thus exceeds $75,000.

General Star seeks review of a final order entered by the District Court on March 3, 2023 granting judgment on the pleadings in favor of One Sotheby's, and dismissing this matter. General Star filed a notice of appeal on March 30, 2023. This Court accordingly has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I.     Did the District Court err in finding that the Conversion Exclusion does not preclude coverage for the Heliac Lawsuit, which arises from the disputed sale of the St. Regis Condo and clearly involves an alleged conversion?

II.     Did the District Court err in finding that the Future Value Exclusion does not preclude coverage for damages allegedly caused by Klioner's repeated assurances concerning the imminent crash of the South Florida real estate market and steep drop in future value of the St. Regis Condo?

**<u>STATEMENT OF THE CASE</u>**

This is an insurance coverage declaratory judgment action. App. 013 (D.E. 47). One Sotheby's seeks coverage from General Star under Real Estate Errors and Omissions Liability Insurance Policy No. NJA363443A (the "Policy") (App. 103 (D.E. 47-4)) for a lawsuit filed by Heliac (the "Heliac Lawsuit") (App. 030 (D.E. 47-1)). The Heliac Lawsuit alleges that Klioner, a real estate agent employed by One Sotheby's, converted over $3.7 million in proceeds from the sale of Heliac's condominium located at 9701 Collins Avenue, Unit 502S in Bal Harbour, Florida (the "St. Regis Condo"). App. 032, 036 (D.E. 47-1, pp. 4, 8). The Heliac Lawsuit also alleges that Klioner pressured Heliac to sell the St. Regis Condo for a below-market price by representing that a 60-70% drop in future value was imminent because the South Florida real estate market was on the verge of collapse. App. 032-34 (D.E. 47-1, pp. 4-6). The Heliac Lawsuit seeks to recover the converted sale proceeds and the difference between the market price and sale price of the St. Regis Condo. App. 041, 043 (D.E. 47-1, pp. 13, 15).

In this coverage action, General Star seeks a declaration that it has no duty to defend One Sotheby's pursuant to two Policy exclusions. *See* App. 013 (D.E. 47). First, in Count II, General Star seeks a declaration that coverage is precluded by Exclusion A(2) (the "Conversion Exclusion"), which bars coverage for all Claims "based on or arising out of … Any disputes involving any Insured's … conversion

… of funds[.]" App. 022-23 (D.E. 47, pp. 10-11). Second, in Count III, General Star seeks a declaration that coverage is precluded by Exclusion A(16) (the "Future Value Exclusion"), which bars coverage for Claims "based on or arising out of … Any guarantee or promise of future status, performance or valuation in the course of performing Professional Services by the Insured." App. 024 (D.E. 47, p. 12).

I.    **Course of Proceedings Below**

After initially denying coverage for the Heliac Lawsuit, General Star agreed to defend One Sotheby's under a strict reservation of rights. App. 017-18 (D.E. 47, pp. 5-6, ¶22). General Star then filed this coverage action seeking a declaration that it owes no duty to defend or indemnify One Sotheby's because coverage is precluded pursuant to the Policy's Conversion Exclusion and Future Value Exclusion.[1] One

---

[1] General Star commenced this coverage action on December 8, 2021. (D.E. 1). At that time, Heliac had only sent a demand letter to One Sotheby's attaching a draft complaint, which had not yet been filed. (D.E. 1-4, D.E. 1-5). Heliac initiated the Heliac Lawsuit on January 31, 2022 with a complaint that was substantively identical to the draft complaint for coverage purposes. (D.E. 19-1). On March 2, 2022, General Star filed a motion to amend its complaint to reflect the filing of the Heliac Lawsuit (D.E. 19), which was granted on April 5, 2022 (D.E. 29). Heliac subsequently filed a first amended complaint (the "Heliac Complaint") on April 11, 2022. (D.E. 38-1). This amended Heliac Complaint, which is now the operative underlying complaint for purposes of the duty to defend analysis, was likewise identical to the preceding versions from a coverage standpoint. General Star filed a second motion to amend on May 9, 2022 so that its coverage complaint reflected the April 11, 2022 filing of the amended Heliac Complaint. (D.E. 38). The District Court granted General Star's second motion to amend on June 3, 2022. (D.E. 42). General Star's Second Amended Complaint, filed on July 25, 2022, is thus the operative coverage complaint on appeal. *See* App. 013 (D.E. 47).

Sotheby's filed a Motion for Judgment on the Pleadings (D.E. 74), and General Star filed a Motion for Summary Judgment (D.E. 83). These Motions involve identical issues. On January 5, 2023, Magistrate Judge Goodman issued a Report and Recommendation granting One Sotheby's' Motion for Judgment on the Pleadings and finding the General Star has a duty to defend. *See* App. 170 (D.E. 92). Over General Star's objection, the District Court adopted the Report without comment.

---

One Sotheby's and Heliac filed motions to dismiss for failure to state a claim and for lack of jurisdiction, respectively, in response to General Star's original complaint. (D.E. 10, D.E. 20). These were denied as moot on April 5, 2022, when the District Court granted General Star's first motion to amend. (D.E. 29). One Sotheby's and Heliac again filed motions to dismiss for failure to state a claim and for lack of jurisdiction, respectively, in response to General Star's first amended complaint. (D.E. 35, D.E. 37). General filed its second motion to amend while those motions to dismiss were pending, and sought to stay briefing on those motions pending the Court's decision on General Star's second motion to amend. (D.E. 38). When the District Court granted General Star's second motion to amend on June 3, 2022, it ruled that One Sotheby's and Heliac's second motions to dismiss would apply to General Star's Second Amended Complaint. (D.E. 42). The parties then briefed the second motions to dismiss (D.E. 43, D.E. 44, D.E. 45), which were denied by the District Court in a September 2, 2022 Order (D.E. 50).

Separately, Defendants also objected to both of General Star's motions to amend (D.E. 21, D.E. 22, D.E. 39, D.E. 40), which were fully briefed as well (D.E. 24, D.E. 41). The arguments raised in the briefs for all the motions to dismiss and motions to amend were fairly duplicative and are not germane to this appeal. In the interest of limiting the Appendix to the documents relevant on appeal, General Star has not included the above docket entries in Appellant's Appendix (beyond its operative Second Amended Complaint), though understands that One Sotheby's may include them in Appellee's Appendix.

App. 232 (D.E. 105). The January 5, 2023 Report and Recommendation is thus the operative decision on appeal.[2]

After entering final default judgment against Klioner on March 2, 2023 (App. 234 (D.E. 109)), the District Court entered Final Judgment in this matter on March 3, 2023 (App. 236 (D.E. 111)). The Final Judgment holds that General Star has a duty to defend One Sotheby's, and that a determination regarding General Star's duty to indemnify is premature. App. 236 (D.E. 111, p. 1). General Star timely filed a Notice of Appeal on March 30, 2023. App. 238 (D.E. 113). General Star contends that the District Court erred in finding that General Star has a duty to defend One Sotheby's by unreasonably applying the Conversion Exclusion and the Future Value Exclusion to the allegations of the Heliac Lawsuit.

## II.    Statement of Facts

Heliac filed the amended Heliac Complaint on April 11, 2022. *See* App. 030 (D.E. 47-1). This is the operative pleading for purposes of the duty to defend. The allegations of the Heliac Complaint are accepted as true, and are as follows.

### A. The Heliac Complaint

Heliac was a real estate holding company whose only principals are two Russian citizens residing in Russia. App. 031 (D.E. 47-1, p. 3, ¶¶9, 11). Heliac

---

[2] The January 10, 2023 Report and Recommendation denying General Star's Motion for Summary Judgment was not substantively briefed because it simply adopted the reasoning of the earlier January 5, 2023 Report. *See* App. 189 (D.E. 98).

purchased the St. Regis Condo on March 6, 2013. App. 032 (D.E. 47-1, p. 4, ¶19).

Klioner was a real estate agent well known in South Florida's Russian-speaking community. App. 032 (D.E. 47-1, p. 4, ¶17). Klioner was hired in 2013 to manage the St. Regis Condo. App. 033 (D.E. 47-1, p. 5, ¶20). To facilitate that management, Klioner was granted access to Heliac's operating account as a non-owner signatory. App. 033 (D.E. 47-1, p. 5, ¶22).

One Sotheby's is a real estate brokerage firm. App. 032 (D.E. 47-1, p. 4, ¶13). One Sotheby's employed Klioner as a real estate sales associate from October 2018 to July 2021. App. 032 (D.E. 47-1, p. 4, ¶14). Prior to being hired by One Sotheby's, Klioner was a defendant in a federal lawsuit accused of fraudulently diverting an estimated $1 million into a business owned his mother. App. 032 (D.E. 47-1, p. 4, ¶18). Once Klioner joined One Sotheby's in October 2018, Heliac entered into listing agreement with One Sotheby's which listed the St. Regis Condo for $5,995,000. App. 033 (D.E. 47-1, p. 5, ¶23).

From December 2020 to February 2021, Klioner "continuously" advised Heliac to "immediately" sell the St. Regis Condo for the following reasons:

(a) The real estate market in Miami Beach, Florida, was on the verge of crashing;
(b) The drop in the St. Regis Condo's value by as much as 60-70% was imminent;
(c) It would be nearly impossible to sell the St. Regis Condo beyond mid-March 2021;
(d) The U.S. economy was on the verge of crashing at any moment;

(e) The U.S. stock market was on the verge of crashing at any moment;

(f) Heliac had to sell the St. Regis Condo urgently, or it would lose money due to its inability to sell the property.

App. 033-34 (D.E. 47-1, pp. 5-6, ¶26). Klioner had superior knowledge of the real estate market, and made those statements "while knowing that Heliac's principals did not reside in the U.S., were underinformed about the real estate market in South Florida …, and were unaware that South Florida was experiencing a real estate boom." App. 034 (D.E. 47-1, p. 6, ¶27).

In December 2020, Klioner presented Heliac an offer to purchase the St. Regis Condo for $3.8 million, "which was significantly below the market price[.]" App. 034 (D.E. 47-1, p. 6, ¶28). Klioner tried to convince Heliac's principals to sell the St. Regis Condo for $3.8 million "as soon as possible" by "pressuring" them via phone calls and WhatsApp messages. App. 034 (D.E. 47-1, p. 6, ¶29). Heliac refused to sell for $3.8 million. *Id*. On January 27, 2021, Klioner converted $20,000 from Heliac's operating account to his personal account. App. 046 (D.E. 47-1, p. 18, ¶95). On February 8, 2021, "[a]fter being pressured by Klioner mercilessly for over two (2) months," Heliac agreed to sell the St. Regis Condo for $4.2 million and signed the sale contract. App. 035 (D.E. 47-1, p. 7, ¶31). The $4.2 million price "was still below the price Heliac wanted to accept for the St. Regis Condo." App. 034 (D.E. 47-1, p. 6, ¶30).

"From the date of the signing of the Sale Contract," Heliac instructed Klioner to deposit the proceeds into its bank account in Switzerland. App. 035 (D.E. 47-1, p. 7, ¶36). Klioner, however, advised Heliac that the proceeds could only be deposited into Heliac's operating account in Florida, which only Klioner could access in person. App. 035-36 (D.E. 47-1, pp. 7-8, ¶¶37-40). Additionally, Klioner advised Heliac that the sale could be completed in a timely manner only if Heliac executed a corporate resolution granting Klioner full authority to sign all closing documents on Heliac's behalf. App. 035 (D.E. 47-1, p. 7, ¶¶33-34). Klioner never informed Heliac that the closing documents could be executed by Heliac through an online notary. App. 035 (D.E. 47-1, p. 7, ¶32).

The sale of the St. Regis Condo took place on March 10, 2021. App. 036 (D.E. 47-1, p. 8, ¶41). In reliance on Klioner's disbursement instructions, $3,885,023.02 was wired from the closing agent's escrow account into Heliac's operating account. *Id*. On March 17, 2021, "Klioner secretly wired $3,734,277.21 from Heliac's operating account into his personal account … without [Heliac's] knowledge or permission[.]" App. 036 (D.E. 47-1, p. 8, ¶44). On June 7, 2021, Klioner admitted to Heliac that he converted the proceeds from the sale to his own use. App. 038 (D.E. 47-1, p. 10, ¶¶47-48). To date, Klioner has not returned the converted proceeds. App. 038 (D.E. 47-1, p. 10, ¶50).

The Heliac Complaint asserts five Counts against One Sotheby's, of which only Count I for Negligent Misrepresentation and Count III for Negligent Employee Training are relevant on appeal.[3] *See* App. 038, 042 (D.E. 47-1, pp. 10, 13). Count I and Count III incorporate all the allegations from Paragraph 1 to 50, including the alleged conversion. *Id.*

Count I for Negligent Misrepresentation alleges that Klioner misrepresented material facts concerning the South Florida real estate market, the "imminent" drop in value of the St. Regis Condo, and international real estate closing procedures. App. 037-38 (D.E. 47-1, pp. 9-10, ¶¶52, 54). Klioner advised that $4.2 million "was the most Heliac could obtain for the property." App. 038 (D.E. 47-1, p. 10, ¶53). One Sotheby's and Klioner had superior knowledge of the real estate market, and "should have been aware of the true value of the St. Regis Condo, should have been able to properly advise Heliac on its appropriate price and the appropriate timing of its sale, and should have been able to properly advise Heliac on the correct procedures for international real estate closings[.]" App. 039-40 (D.E. 47-1, pp. 11-

---

[3] The Heliac Complaint also asserts Count II for Negligent Employee Hiring, Count IV for Vicarious Liability for Conversion, Count V for Breach of Duties in Violation of § 475.25(1)(b), Florida Statutes. One Sotheby's does not dispute there is no coverage for these Counts. Of note, however, Count II alleges that it was unreasonable for One Sotheby's to hire Klioner to handle high net worth clients' funds given that a background check would have revealed that Klioner had previously been sued for mishandling business funds. App. 041 (D.E. 47-1, p. 13, ¶¶68-70).

12, ¶¶57-58). One Sotheby's and Klioner "intended and expected Heliac to rely on Klioner's misrepresentations to induce Heliac to sell the St. Regis Condo and, consequently, collect a commission from the sale … as soon as possible." App. 040 (D.E. 47-1, p. 12, ¶60). The value of the St. Regis Condo at the time of the sale was higher than $4.2 million, and increased to $4.7 million a few months later. App. 040 (D.E. 47-1, p. 12, ¶62). Had Heliac not followed Klioner's advice concerning real estate closing procedures, "Heliac's funds could not have been converted." App. 040 (D.E. 47-1, p. 12, ¶63). Count I seeks to recover the converted proceeds and the Market Value Damages. App. 041 (D.E. 47-1, p. 13, ¶64).

Count III for Negligent Employee Training alleges that One Sotheby's had a duty to properly and adequately train its sales associates. App. 042 (D.E. 47-1, p. 14, ¶74). This duty included ensuring that sales associates: (1) advised clients of the true market value of properties being listed for sale and the market conditions affecting that value; (2) refrained from pressuring clients to sell properties for prices below what clients were comfortable accepting; (3) informed clients of proper real estate closing procedures; (4) not overstep their powers by taking on full signing authority and funds disposition in real estate transactions; and (5) precisely followed client instructions for delivery of proceeds. App. 042-43 (D.E. 47-1, pp. 14-15, ¶74). One Sotheby's negligent employee training in those obligations "is evident from [Klioner's] handling of the St. Regis Condo sale." App. 043 (D.E. 47-1, p. 15, ¶75).

Klioner was to ensure that the St. Regis Condo sale was closed correctly and that the proceeds reached Heliac. App. 043 (D.E. 47-1, p. 15, ¶76). Heliac was damaged "to the extent of the difference between the market price of the St. Regis Condo and its sale price, and the loss of the St. Regis Condo sale proceeds." App. 043 (D.E. 47-1, p. 15, ¶78).[4]

## B. The General Star Policy

The General Star Policy provides professional liability coverage for real estate brokers as follows:

### A. Damages

> The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages for Claims first made against the Insured during the Policy Period and first reported to the Company in writing during the Policy Period or applicable Extended Reporting Period, arising out of any act, error, omission or Personal Injury in the rendering of or failure to render Professional Services by an Insured[.]

App. 107 (D.E. 47-4, p. 6). The parties do not dispute that the Heliac Lawsuit satisfies these conditions. Rather, the issue is whether coverage is nevertheless precluded under the Conversion Exclusion (Exclusion A(2)) and the Future Value

---

[4] Because Count III does not incorporate the allegations of Count I, but only Paragraphs 1 to 50 of the Heliac Complaint, Count III does not actually allege that the St. Regis Condo was sold for a below-market price – only that it was sold for a price that was less than Heliac wanted. *See* App. 034 (D.E. 47-1, p. 6, ¶30).

Exclusion (Exclusion A(16)). These Exclusion, set forth in Section VII, provide as

follows:

> The Company has no obligation under this Policy to pay Damages or Claims Expenses or to provide a defense, in connection with any Claim(s):

> A. Under any part of this Policy if based on or arising out of the following:

>> 2. Any disputes involving any Insured's fees, commissions or charges, the failure to pay or collect premium, escrow or tax money, or the conversion, misappropriation, commingling or embezzlement of funds or other property. However, in the event a Claim is made against an Insured seeking both the return of escrow money and alleging an act, error, omission or Personal Injury in the performance of Professional Services covered under this Policy, the Company will defend such Claim without any obligation to reimburse the Insured for the payment of monies held as escrow.

* * * * *

>> 16. Any guarantee or promise of future status, performance or valuation in the course of performing Professional Services by the Insured.

App. 112, 114 (D.E. 47-4, pp. 11, 13).

## C. The Report and Recommendation

The January 5, 2023 Report and Recommendation is the operative decision

on appeal. *See* App. 170 (D.E. 92). One Sotheby's did not contest that the Policy's

Conversion Exclusion precludes coverage for Heliac's allegations that Klioner converted the sale proceeds. The Report accordingly focused on the crux of the parties' disagreement: whether the Market Value Damages, and the underlying misrepresentations, fall partially or potentially within the scope of the Policy's coverage such that General Star has a duty to defend. App. 177 (D.E. 92, p. 8). The Report only considered Count I for Negligent Misrepresentation and Count III for Negligent Employee Training because One Sotheby's did not argue the other Counts triggered coverage. *Id.*

The Report first analyzed the Conversion Exclusion. App. 179-82 (D.E. 92, pp. 10-13). The Report recognized the breadth accorded by Florida courts to the phrase "arising out of." App. 178-79 (D.E. 92, pp. 9-10). However, the Report concluded that, "fairly read," the allegations of the Heliac Lawsuit:

> do not definitively confirm that Klioner's statements about the Miami real estate market … were made with the goal of forcing a quick sale so that he could convert millions of dollars in proceeds. It is just as plausible, based on a fair reading of the Underlying Complaint, that Klioner did not decide to convert the funds until *after* the sale had occurred. And, if Klioner did not decide to convert the funds until after the sale, then the preceding actions – and the damages caused by the market differences – could not have *arisen from* the conversion.

App. 179-80 (D.E. 92, pp. 10-11) (internal citations omitted) (emphasis in original). According to the Report, there is doubt over Klioner's motivations since the Heliac Lawsuit does not expressly "allege a plan to *convert* the sale proceeds" by making misrepresentations. App. 181 (D.E. 92, p. 12) (emphasis in original). The Report

thus concluded that General Star did not meet its burden of establishing "that *all* fair readings" of the Heliac Complaint fall within the Conversion Exclusion. App. 182 (D.E. 92, p. 13) (emphasis in original).

Next, the Report analyzed the Future Value Exclusion. App. 182-86 (D.E. 92, pp. 13-17). The fundamental disagreement is whether Klioner's alleged statements rise to the level of "promises" or "guarantees" such that they trigger the Future Value Exclusion. App. 114 (D.E. 47-4, p. 13). The Report agreed that undefined policy terms should be given their plain and ordinary meaning. App. 183 (D.E. 92, p. 14). While the Report identified the definitions found in Merriam-Webster's Dictionary, it did not analyze those definitions. App. 184 (D.E. 92, p. 15). General Star's view that Klioner's statements qualified as promises or guarantees due to their specificity, conviction, and certainty was accepted as reasonable. App. 185 (D.E. 92, p. 16). However, the Report found that One Sotheby's' view that the misrepresentations were merely "errors in advice" was also reasonable. App. 186 (D.E. 92, p. 17). This is because Klioner's misrepresentations did not concern "discernable **facts**," but "speculative future economic events" which "[n]o person is able to fully and definitively predict[.]" App. 185 (D.E. 92, p. 16). The Report thus concluded that General Star has a duty to defend One Sotheby's because the Heliac Complaint does not "unequivocally" allege that Klioner's misrepresentations were promises or guarantees sufficient to trigger the

Future Value Exclusion. App. 186 (D.E. 92, p. 17).

## III. Standard of Review

The grant or denial of a motion for judgment on the pleadings is reviewed *de novo*. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). "Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005). In determining whether a party is entitled to judgment on the pleadings, courts accept as true all material facts alleged in the non-moving party's pleading, and view those facts in the light most favorable to the non-moving party. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

The grant or denial of a summary judgment motion is also reviewed *de novo*. *St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 897 (11th Cir. 2009). Motions for summary judgment should be granted only when there are no genuine issue as to any material fact and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

The interpretation of an insurance contract is a matter of law subject to *de novo* review. *Chalfonte Condo. Apartment Ass'n Inc. v. QBE Ins. Corp.*, 561 F.3d 1267, 1274 (11th Cir. 2009) (quotation omitted).

# SUMMARY OF THE ARGUMENT

1.    In finding that the Conversion Exclusion does not relieve General Star of its duty to defend the Heliac Lawsuit, the District Court ignored the Exclusion's plain language. The Conversion Exclusion is not limited to Claims arising out of an Insured's conversion, but more broadly applies to any Claims arising out of "*[a]ny disputes involving* any Insured's … conversion[.]" App. 112 (D.E. 47-4, p. 11) (emphasis added). The Conversion Exclusion thus extends to Klioner's alleged misrepresentations concerning future market status even if those misrepresentations did not arise from the subsequent conversion. Klioner's alleged misrepresentations arise from the sale of the St. Regis Condo, and the sale of the St. Regis Condo is a dispute which unquestionably involves an alleged conversion. Such a broad application of the Conversion Exclusion is intentional. The Conversion Exclusion was purposefully written to apply this broadly since disputes involving conversion should be covered under crime or fidelity insurance policies, not professional liability policies.

2.    The Heliac Complaint cannot be fairly read as alleging a separate claim for Market Value Damages that is independent of Heliac's claim for the converted proceeds. Based on the allegations of the Heliac Complaint, it is inconceivable that Klioner did not decide to convert the sale proceeds until after the sale took place. The only plausible interpretation of the Heliac Complaint is that it alleges a

conversion scheme by Klioner, and his misrepresentations are part and parcel of that scheme. Furthermore, Heliac does not actually allege an independent claim for the Market Value Damages. Rather, Heliac seeks to recover the Market Value Damages as part of the Negligent Misrepresentation and Negligent Employee Training Counts, which also allege conversion and seek to recover the converted proceeds. It is, moreover, doubtful whether it would even be possible for Heliac to assert an independent claim for the Market Value Damages given the absence of case law from any U.S. jurisdiction recognizing a cause of action by a seller against their own realtor based on the seller having sold their property for less than its alleged market value.

3.     To the extent that the Market Value Damages alleged in the Heliac Complaint fall outside the scope of the Conversion Exclusion, coverage is nevertheless precluded by the Future Value Exclusion. The Market Value Damages are based on Klioner's alleged misrepresentations that the South Florida real estate market was on the verge of a crash, and an imminent drop in value of the St. Regis Condo by 60-70% would make it nearly impossible to sell after March 2021. The District Court erred in finding that Klioner's statements could reasonably be interpreted as not rising to the level of a "promise" or "guarantee," and thus concluding that the Future Value Exclusion did not preclude coverage for the alleged Market Value Damages. A close analysis of the dictionary, lay, and legal definitions

of the terms "promise" and "guarantee" demonstrates that Klioner's statements unquestionably qualify as both "promises" and "guarantees." Because the District Court failed to perform such an analysis, its conclusion that Klioner's statements can reasonably be interpreted as not rising to the level of a "promise" or guarantee" is in error.

4.  The District Court also erred in finding that Klioner's alleged statements regarding future market conditions and property values do not trigger the Future Value Exclusion because they concern speculative future economic events, not discernable facts. Such an interpretation has no basis in the plain language of the Future Value Exclusion, which extends to "*Any* guarantee or promise of future status, performance or valuation[.]" App. 114 (D.E. 47-4, p. 13) (emphasis added). It is not limited to promises or guarantees concerning discernable facts. Such a limitation, moreover, frustrates the intent of the Future Value Exclusion. The very purpose of the Future Value Exclusion is to preclude coverage for Claims arising out of promises or guarantees concerning speculative future events, which are much more likely to be inaccurate than statements concerning discernable facts. The District Court's interpretation that qualifying statements should concern discernable facts renders the Future Value Exclusion meaningless. Such an interpretation is therefore unreasonable, contrary to the policy language, and should be reversed.

## **ARGUMENT**

The District Court erred in finding that General Star has a duty to defend One Sotheby's. The Heliac Lawsuit cannot reasonably be interpreted as stating "a cause of action that seeks recovery for the type of damages covered by the insurance policy in question." *State Farm Fire & Cas. Co. v. Tippett*, 864 So. 2d 31, 35-36 (Fla. 4th DCA 2003). The damages alleged in Counts I and III, including the Market Value Damages, fall entirely within the ambit of the Conversion Exclusion and/or the Future Value Exclusion. General Star accordingly has no duty to defend One Sotheby's. The District Court's judgment on the pleadings in favor of One Sotheby's should be reversed, and summary judgment granted for General Star.

This is a diversity action and the substantive law of Florida governs the determination of the coverage issues presented. *See Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011). An insurer has a duty to defend when the "fairly read" allegations in the underlying complaint bring the matter within the coverage of the insured's policy. *Fun Spree Vacations, Inc. v. Orion Ins. Co.*, 659 So. 2d 419, 422 (Fla. 3d DCA 1995). The duty to defend is distinct from, and broader than, the duty to indemnify. *Keen v. Fla. Sheriffs' Self-Ins. Fund*, 962 So. 2d 1021, 1024 (Fla. 4th DCA 2007). An insurer's duty to defend is based solely on the alleged facts in the underlying complaint, which the court assumes are true. *Jones v. Florida Ins. Guar. Ass'n*, 908 So. 2d 435, 443 (Fla. 2005).

If the applicability of a policy exclusion is clear based on the allegations of the underlying complaint, the insurer has no duty to defend. *Tippett*, 864 So. 2d at 35. The mere existence of "buzz words" or artful pleading will not create a duty to defend. *Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.*, 771 So. 2d 579, 582 (Fla. 4th DCA 2000). Rather, the allegations within the complaint must seek recovery for a matter not prohibited by a policy exclusion. *Grissom v. Commercial Union Ins. Co.*, 610 So. 2d 1299, 1306-07 (Fla. 1st DCA 1992). "[T]he burden of demonstrating that the allegations of the complaint are cast solely and entirely within [a] policy exclusion" rests with the insurer. *Hartford Accident & Indem. Co. v. Beaver*, 466 F.3d 1289, 1296 (11th Cir. 2006) (quotation omitted). If it is found that an insurer has no duty to defend the insured, it follows that the insurer likewise has no duty to indemnify. *Fun Spree*, 659 So. 2d at 422.

Under Florida law, insurance contracts are "construed according to their plain meaning." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). "In interpreting insurance contracts, the Florida Supreme Court has made clear that the language of the policy is the most important factor." *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (quotation omitted). "[C]ourts should not put strain and unnatural construction on the terms of the policy in order to create uncertainty or ambiguity." *Thomas v. Prudential Prop. & Cas.*, 673 So. 2d 141, 142 (Fla. 5th DCA 1996).

## I. Coverage is Barred by the Conversion Exclusion

The Conversion Exclusion precludes coverage for any Claims "Under any part of this Policy if based on or arising out of … Any disputes involving any Insured's … conversion[.]" App. 112 (D.E. 47-4, p. 11). The Heliac Lawsuit arises out of the sale of the St. Regis Condo. Each Count asserted against One Sotheby's incorporates Klioner's alleged conversion and seeks to recover the converted proceeds. The Conversion Exclusion thus bars coverage for the entire Heliac Lawsuit.

### A. The Conversion Exclusion Broadly Extends to Any Claims Arising Out of *Any Disputes Involving* an Insured's Conversion

The District Court found that the Conversion Exclusion does not preclude coverage for the Heliac Lawsuit in its entirety because the Market Value Damages can be plausibly read as not arising out of Klioner's conversion. *See* App. 181-82 (D.E. 92, pp. 12-13). However, just because Counts I and III also seek to recover the Market Value Damages in addition to the converted proceeds, is not enough to push the Heliac Lawsuit out of the ambit of the Conversion Exclusion.

In *Taurus Holdings*, the Florida Supreme Court interpreted the phrase "arising out of" in a policy exclusion quite broadly:

> The term "arising out of" is broader in meaning than the term "caused by" and means "originating from," "having its origin in," "growing out of," "flowing from," "incident to" or "having a connection with." …

> [The term] requires more than a mere coincidence between the conduct
> . . . and the injury. It requires some causal connection, or relationship.
> But it does not require proximate cause.

913 So. 2d at 539-40. Application of the broad "arising out of" standard in this case results in the Conversion Exclusion encompassing the Market Value Damages so long as they have "a connection with" conversion. Unquestionably, they do. Count I of the Heliac Lawsuit alleges that the St. Regis Condo was sold for a below-market price and that the proceeds of the sale were converted. The connection between the Market Value Damages and the conversion is the sale of the St. Regis Condo. The entire Heliac Lawsuit thus falls within the scope of the Conversion Exclusion.

Furthermore, the Conversion Exclusion is not limited to Claims that are part of a plan to convert. *See* App. 181 (D.E. 92, p. 12). The Conversion Exclusion applies more broadly to "*any* Claim(s) … Under any part of this Policy if based on or arising out of … *Any disputes involving* any Insured's … conversion[.]" App. 112 (D.E. 47-4, p. 11) (emphasis added). The District Court did not give proper weight to the phrase "Any disputes involving[,]" which considerably broadens the scope of the Conversion Exclusion. *See* App. 179-80 (D.E. 92, pp. 10-11).

In *Houston Specialty Insurance Co. v. Fenstersheib*, the court examined a theft exclusion that precluded coverage for "[a]ny claim arising out of, relating to or involving improper commingling of client funds, conversion of anyone's funds, theft of anyone's funds[.]" --- F. Supp. 3d ---, No. 20-60091-CIV-ALTMAN/Hunt, 2022

U.S. Dist. LEXIS 179241, at *19 (S.D. Fla. Sep. 30, 2022). While the insured conceded the theft exclusion precluded coverage for civil theft and conversion claims, he argued that "non-theft" counts alleging negligence, negligent retention, and breach of contract, were not subject to the theft exclusion since they were "separate and apart from any theft of funds[.]" *Id*. at *20-21. The court disagreed because the insured's narrow interpretation of the theft exclusion ignored the phrases "arising out of," "relating to," and "involving." *Id*. at *21. The court explained that "the addition of these three phrases must broaden the universe of excluded claims. The question is: How broad? And the answer seems to be 'quite broadly.'" *Id*. at *22.

The Conversion Exclusion here is phrased even more broadly than the theft exclusion in *Houston Specialty*, yet the District Court applied the same flawed interpretation that the court in *Houston Specialty* rejected. The District Court found that "fairly read," the allegations of the Heliac Complaint do not definitively confirm that Klioner's statements "were made with the goal of forcing a quick sale" so that Klioner could convert the proceeds. App. 180 (D.E. 92, p. 11). The Conversion Exclusion was thus found inapplicable because the Market Value Damages "could not have *arisen from* the conversion" if Klioner did not decide to convert the funds until after the sale. *Id*. (emphasis in original). However, the Conversion Exclusion is

not limited to Claims arising out of a conversion, but rather extends to Claims arising out of any disputes *involving* a conversion.

In limiting the Conversion Exclusion to Claims arising out of a conversion, the District Court impermissibly modified the Exclusion. *See Star Title Partners of Palm Harbor, LLC v. Illinois Union Ins. Co.*, No. 21-13343, 2022 U.S. App. LEXIS 24930, at *12 (11th Cir. Sep. 6, 2022) ("As attractive as that proposition may be, it is simply not what the clause provides."). Any reasonable interpretation of the Conversion Exclusion must give meaning to the phrase "Any disputes involving." App. 112 (D.E. 47-4, p. 11). The Florida Supreme Court has held that "involve" is a word of common usage and, as such, should be construed in its plain and ordinary sense. *Francis v. State*, 808 So. 2d 110, 138 (Fla. 2001); *see also Colorado Boxed Beef Co. v. Evanston Ins. Co.*, No. 8:18-cv-1237-T-02JSS, 2018 U.S. Dist. LEXIS 217936, at *5 (M.D. Fla. Dec. 27, 2018) ("the phrase 'or in any way involving' is broad as a term of regular English usage") (collecting cases). Florida's Second District Court of Appeal relied on Webster's Dictionary to find that "involve" is defined, in pertinent part, as "to draw in as a participant," to "implicate," "to relate closely," to "connect," or "to have an effect on[.]" *State v. Elder*, 975 So. 2d 481, 483 (Fla. 2d DCA 2007) (internal citations omitted).

The plain language of the Conversion Exclusion thus precludes coverage for Claims that arise out of any disputes which "implicate," "relate closely," "connect,"

or "have an effect on" any Insured's conversion. Even if the Heliac Complaint can be fairly read as alleging that Klioner did not decide to convert the sale proceeds until after making the misrepresentations at issue, which General Star strongly disputes, the alleged misrepresentations "implicate," "relate closely" to, "connect" to, and "have an effect on" the conversion. Klioner "intended and expected" Heliac to rely on his misrepresentations to induce Heliac to quickly sell the St. Regis Condo. App. 040 (D.E. 47-1, p. 12, ¶60). The misrepresentations accomplished this purpose. The resulting sale of the St. Regis Condo is the dispute at the center of the Heliac Lawsuit, and a necessary antecedent to the conversion. Because the sale out of which Counts I and III arise unquestionably involved an alleged conversion by an Insured, the Conversion Exclusion precludes coverage for the entirety of the Heliac Lawsuit notwithstanding the alleged Market Value Damages.

## B. The Conversion Exclusion is Intended to be Broadly Applied as Written

The District Court relied on an inapplicable, though illustrative, analogy in explaining why the Conversion Exclusion does not preclude coverage for the Market Value Damages. The Report posits that a homeowner's insurance policy with an exclusion for damage arising out of a flood would preclude coverage for damage caused by the heavy rain of a hurricane. App. 180-81 (D.E. 92, pp. 11-12). However, the flood exclusion would seemingly *not* preclude coverage for damage to the roof caused by a tree which fell during the same hurricane. *Id*. The District Court stated

that "[t]he mere fact that two harms may arise from the same underlying facts does not mean that the two harms arise from each other." App. 180 (D.E. 92, p. 11).

This reasoning does not apply to the Conversion Exclusion, which was written so that it *would* apply to any "harm" so long as it arises from any dispute which involves an alleged conversion by an Insured. If the District Court's hypothetical flood exclusion were drafted – like the Conversion Exclusion here – to preclude coverage for any claim arising from damage *involving* a flood, then it *would* preclude coverage for the damage caused by a fallen tree during a hurricane. In fact, there are specific hurricane policies a homeowner can purchase precisely to insure against all risks associated with floods and hurricanes. Likewise, businesses can purchase specific crime policies to insure against risks associated with crime by employees, including conversion of client funds.

Commercial crime policies and fidelity bonds are available for businesses whose employees conduct high value transactions involving client funds, such as banks, car dealerships, and real estate brokerage firms. This type of coverage is purchased precisely to mitigate the significant risk of employee dishonesty presented in these contexts. The broad phrasing of the Conversion Exclusion is consistent with the understanding that professional liability policies are not intended to cover criminal acts and financial dishonesty. Ultimately, a business's failure to supervise and train employees not to convert client funds is a matter for crime insurance, not

professional liability. One Sotheby's is alleged to have hired a sales associate previously accused of mishandling client funds, and doing so without conducting a proper background check, training, or supervision. App. 032, 041 (D.E. 47-1, pp. 4, 13). By not purchasing crime or fidelity coverage, One Sotheby's assumed the risk that such an employee may convert client funds. It cannot now re-write the Policy's broad Conversion Exclusion and pass this risk to General Star. Simply put, One Sotheby's is not entitled to the defense of a matter that should have been covered by a crime policy, under the guise of professional liability. The Conversion Exclusion ensures this result through its intentionally broad language.

## C. The Heliac Complaint is Not "Fairly Read" as Alleging that Klioner's Misrepresentations were Independent of the Conversion Scheme

The District Court concluded it is "plausible" to interpret the Heliac Complaint as alleging that Klioner did not decide to convert the sale proceeds until after the sale occurred. App. 180 (D.E. 92, p. 11). This is not a fair reading of the Heliac Complaint. The Heliac Complaint unquestionably alleges a conversion scheme by Klioner. Read in context, the misrepresentations which allegedly caused the Market Value Damages are part and parcel of that conversion scheme.

For ease of reference, the Heliac Complaint alleges the following actions by Klioner: (1) Klioner mercilessly pressures Heliac from December 2020 to February 2021 to sell the St. Regis Condo by continuously misrepresenting that the South

Florida real estate market is on the verge of collapse, which will cause an imminent 60-70% drop in the value of the St. Regis Condo and make it nearly impossible to sell after March 2021; (2) Klioner knows that Heliac's principals are underinformed about the South Florida real estate market and intends for them to rely on his misrepresentations so they will agree to a quick sale; (3) on January 27, 2021, Klioner converts $20,000 from Heliac's operating account; (4) on February 8, 2021, Klioner's misrepresentations have the intended effect when Heliac agrees to sell for $4.2 million; (5) that same day, Klioner misrepresents that the sale proceeds can only be deposited into the operating account which only he can access; (6) Klioner misrepresents that the sale can only be accomplished in time if Heliac executes a corporate resolution giving Klioner full authority to sign all closing documents; (7) the sale takes place March 10, 2021, and the proceeds are wired to the operating account based on Klioner's instructions; (8) on March 17, 2021, Klioner wires the sale proceeds to his personal account. *See* App. 033-38, 040, 046 (D.E. 47-1, pp. 5-10, 12, 18).

The only fair reading of these allegations is that Klioner's misrepresentations were made with the goal of forcing a quick sale so that he could convert the sale proceeds. Contrary to the District Court's conclusion, it is not plausible to read the Heliac Complaint as alleging that Klioner did not decide to convert the sale proceeds until after the sale had occurred on March 10, 201. App. 180 (D.E. 92, p. 11). It is

simply inconceivable that Klioner's alleged misrepresentation campaign from December 2020 to February 2021 was independent of his March 17, 2021 conversion, when Klioner is already alleged to have converted $20,000 on January 27, 2021. If the allegations of a complaint, "fairly read," leave any doubt as to whether a policy exclusion applies, that doubt must be resolved in favor of the insured. *Fun Spree*, 659 So. 2d at 422. However, courts should not adopt interpretations that strain credulity in order to find such doubt. *See Thomas*, 673 So. 2d at 142. Under any reasonable interpretation of the Heliac Complaint, Klioner's misrepresentations are part and parcel of his conversion scheme.

### D. The Market Value Damages are Not Alleged as a Separate and Independent Claim

The District Court concluded that Counts I and III do not fall within the ambit of the Conversion Exclusion because a finding of Market Value Damages "would be independent of any findings of conversion of funds[.]" App. 179 (D.E. 92, p. 10). It was irrelevant to the District Court's analysis that Counts I and III also allege conversion and seek to recover the converted proceeds. That the Market Value Damages *could* be the basis for a separate and independent action, however, does not change the reality that they are not, in fact, a separate and independent claim.

The Middle District of Florida considered a similar argument in *Colorado Boxed Beef*, 2018 U.S. Dist. LEXIS 217936. The underlying lawsuit broadly alleged

that the insured officers and directors falsely induced plaintiffs to sell their equity securities at an artificially low price. *Id.* at *6-7. It also included allegations of self-dealing and corporate theft. *Id.* at *9. The insureds argued that coverage for the self-dealing and corporate theft was not precluded by a broad securities exclusion, because those allegations could be the basis for separate and independent claims. *Id.* The court disagreed, finding that:

> when read with the underlying complaint, these acts *do not* stand alone. They are part and parcel of the fraudulent inducement and purchase of the [shares]. These purported claims more than "in any way involve" equity security sales[.]

*Id.* at *8-9 (emphasis added). This Court affirmed, finding that the insured's argument read the self-dealing and corporate theft allegations out of context. 772 Fed. App'x 850, 851 (11th Cir. 2019). To the extent the complaint referred to "improper management and self-dealing" it did so as part of the overall scheme to induce the underlying plaintiffs to sell shares at an artificially low price, not in support of standalone claims. *Id.*

Even if the alleged Market Value Damages may potentially be the basis for a separate claim, like the self-dealing and corporate theft allegations in *Colorado Boxed Beef*, no such separate claim exists. It is, moreover, unclear whether it would even be possible for Heliac to assert an independent claim against One Sotheby's solely for the Market Value Damages. General Star has found no Florida case law, or case law from any other U.S. jurisdiction, recognizing a cause of action by a seller

against their real estate broker based on the sale of a property for a below-market price. There is accordingly serious doubt as to whether Heliac could assert a separate and independent claim against One Sotheby's limited solely to the Market Value Damages. Coverage is thus precluded for the entirety of the Heliac Lawsuit pursuant to the Conversion Exclusion.

## II. Coverage is Barred by the Future Value Exclusion

Assuming *arguendo* that the Conversion Exclusion does not apply to the Market Value Damages (which is strenuously denied), coverage would still be precluded pursuant to the Future Value Exclusion. The Future Value Exclusion precludes coverage for "any Claim(s): … if based on or arising out of … Any guarantee or promise of future status, performance or valuation in the course of performing Professional Services by the Insured." App. 112, 114 (D.E. 47-4, pp. 11, 13). The alleged Market Value Damages are based entirely on Klioner's statements regarding future market conditions and property value, and are precluded from coverage by the Future Value Exclusion.

### A. Klioner's Alleged Assurances Regarding Future Market Conditions and Property Value are Unquestionably "Promises" or "Guarantees"

The only reasonable interpretation of Klioner's statements concerning the future of the South Florida real estate market and its impact on the value of the St.

Regis Condo is that those statements constitute "promises" or "guarantees" sufficient to trigger the Future Value Exclusion.

### *i. Klioner's Alleged Statements are "Promises"*

As stated by the District Court, Merriam-Webster's Online Dictionary defines "promise" as "a legally binding declaration that gives the person to whom it is made a right to expect or to claim the performance or forbearance of a specified act"; "reason to expect something"; "to pledge to do, bring about, or provide"; "warrant, assure"; and "to give ground for expectation: be imminent." "Promise," MERRIAM-WEBSTER'S ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/promise (last visited May 12, 2023). Although General Star has not found Florida decisions analyzing the meaning of the term "promise," case law from other jurisdictions is instructive. In *Goldstein v. Miles*, a Maryland appellate court noted that "the term 'promise,' has two different meanings: lay and legal." 859 A.2d 313, 328 (Md. Ct. App. 2004). The lay meaning of "promise denotes a pledge to which the law attaches no obligation[.]" *Id*. (internal quotations omitted). The Vermont District Court likewise acknowledged that:

> the word "promise" is not limited to acts having legal effect . . . [rather] the word "promise" is commonly and quite properly also used to refer to the complex of human relations which results from the promisor's words or acts of assurance, including the justified expectations of the promisee and any moral or legal duty which arises to make good the assurance by performance.

*Boule v. Pike Indus.*, No. 5:12-cv-7, 2013 U.S. Dist. LEXIS 26588, at *30 (D. Vt. Feb. 27, 2013) (quoting Restatement (Second) of Contracts § 2 (1981)). In order for a promise to be binding, it must be more than a "vague assurance" but rather a statement "of a specific and definite nature[.]" *Dillon v. Champion Jogbra, Inc.*, 819 A.2d 703, 710 (Vt. 2002). The Iowa District Court has found that a promise is "definite" when "the assertion is explicit and without any doubt or tentativeness." *Morris v. Am. Freightways, Inc.*, No. 4:01-cv-40475, 2002 U.S. Dist. LEXIS 16050, at *8 (S.D. Iowa Aug. 20, 2002) (internal quotations omitted).

Because undefined phrases in an insurance policy should be read "in light of the skill and experience of ordinary people[,]" these lay definitions of "promise" control. *Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc.*, 874 So. 2d 26, 29 (Fla. 2d DCA 2004). It is therefore unnecessary for Klioner's statements to have been legally binding in order for those statements to qualify as promises. Rather, the key inquiry is whether his statements were sufficiently specific and definite, as opposed to vague assurances. The statements as alleged in the Heliac Complaint meet this lay definition.

Beginning in December 2020, Klioner is alleged to have repeatedly assured Heliac, "without any doubt or tentativeness" (*Morris*, 2002 U.S. Dist. LEXIS 16050 at *8) that the Miami real estate market was "on the verge" of crashing (App. 033-34 (D.E. 47-1, pp. 5-6)). He put that crash on a "specific and definite" timeline

(*Dillon*, 819 A.2d at 710) by telling Heliac it "*would* lose money due to its inability to sell the property" after March 2021 (App. 034 (D.E. 47-1, p. 6) (emphasis added)). Klioner further provided a precise projection of an "imminent" drop in value of the St. Regis Condo by as much as 60-70%. *Id*. He assured Heliac that $4.2 million was "the most" it would receive. App. 038 (D.E. 47-1, p. 10). Klioner "mercilessly" repeated these definite statements over two months despite knowing that Heliac's foreign principals were underinformed regarding the South Florida real estate market. App. 034-35 (D.E. 47-1, pp. 6-7). Klioner "intended and expected" Heliac to rely on his misrepresentations in order to induce Heliac to sell the St. Regis Condo "as soon as possible." App. 040 (D.E. 47-1, p. 12). His statements are alleged to have had the intended effect. Heliac agreed to sell the St. Regis Condo for $4.2 million because it had reason to expect the imminent drop in value of the St. Regis Condo based on Klioner's constant assurances that this was a certain inevitability. *See* "Promise," Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/promise (last visited May 12, 2023). Klioner's alleged statements, read in context, cannot reasonably be interpreted as not satisfying the lay definitions of "promise."

Furthermore, Klioner's statements qualify as "promises" even under the accepted legal definition. From a legal standpoint, Merriam-Webster defines "promise" as "a legally binding declaration that gives the person to whom it is made

a right to expect or to claim the performance or forbearance of a specified act[.]" *Id*. In *Goldstein*, the Maryland court noted that the "generally accepted" definition for a legal promise was "the manifestation of an intention to act or refrain from acting in a specified manner, conveyed in such a way that another is justified in understanding that a commitment has been made." 859 A.2d at 329 (quoting Black's Law Dictionary and collecting legal definitions); *see also State Bank of Standish v. Curry*, 500 N.W.2d 104, 108 (Mich. 1993) (same definition); *Wooley v. Lucksinger*, 961 So. 2d 1228 (La. Ct. App. 2007) (same definition). The Ohio Supreme Court has interpreted the legal definition of "promise" as follows:

(1) A promise is an undertaking, however expressed, either that something shall happen, or that something shall not happen, in the future.

(2) Words which in terms promise the happening or failure to happen of something not within human control, or the existence or non-existence of a present or past state of facts, are to be interpreted as a promise or undertaking to be answerable for such proximate damage as may be caused by the failure to happen or the happening of the specified event, or by the existence or non-existence of the asserted state of facts.

*Schenley v. Kauth*, 122 N.E. 189, 191 (Ohio 1953) (quoting the Restatement of the Law of Contracts, § 1).

Here, Klioner's statements are alleged to have given Heliac the right to expect the performance of a specified act – the crash of the real estate market and a steep decline in the value of the St. Regis Condo by March 2021. Klioner manifested an

intent for Heliac to act "urgently" and "immediately" sell the St. Regis Condo "as soon as possible" for $4.2 million before the "imminent" drop in value in March 2021. App. 033-34, 037-38, 040 (D.E. 47-1, pp. 5-6, 9-10, 12). Heliac alleges that it was justified in relying on these representations based on Klioner's extensive experience in the real estate industry. App. 034, 039-40 (D.E. 47-1, pp. 6, 11-12).

The Heliac Lawsuit implicitly alleges that Klioner's statements were legally binding given the existing fiduciary relationship. The very basis for the Market Value Damages is the premise that Heliac purportedly suffered a legally actionable injury because these statements turned out to be inaccurate. If the statements were not legally binding, whether based on Klioner's fiduciary status or otherwise, there would be no actionable injury. That Klioner's statements concerned events beyond human control does not preclude those statements from being considered a legal promise. *See Schenley*, 122 N.E. at 191 (explaining that that a legal "promise" includes "[w]ords which in terms promise the happening or failure to happen of something not within human control"). As such, Klioner's misrepresentations qualify as "promises" even under the accepted legal definitions of that term.

Based on this exhaustive analysis of the dictionary, lay, and legal definitions of the term "promise," it is clear that Klioner's specific and definite assurances, which gave Heliac grounds to expect an imminent 60-70% drop in the value of the St. Regis Condo if it did not sell by March 2021, qualify as a "promise of future

status, performance or valuation[.]" App. 114 (D.E. 47-4, p. 13). Since the Market Value Damages arise from those statements, the Future Value Exclusion precludes coverage based on the allegations of the Heliac Complaint.

### ii. Klioner's Alleged Statements are "Guarantees"

Klioner's alleged statements also qualify as a "guarantee," which is defined even more broadly than "promise." General Star was unable to locate case law interpreting the plain meaning of the word "guarantee" as used in the Future Value Exclusion. However, Merriam-Webster's Online Dictionary defines "guarantee" as "an assurance for the fulfillment of a condition" or "to assert confidently." "Guarantee," MERRIAM-WEBSTER'S ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/guarantee (last visited May 12, 2023).

Klioner's statements repeatedly assured Heliac about "the fulfillment of a condition" – the imminent crash of the South Florida real estate market, a corresponding 60-70% drop in value of the St. Regis Condo, and the inability to sell the Condo beyond March 2021. App. 033-34 (D.E. 47-1, pp. 5-6). Klioner further represented unequivocally that $4.2 million was "the most" Heliac could obtain for the St. Regis Condo. App. 038 (D.E. 47-1, p. 10). To say that Klioner is alleged to have made these statements "confidently" is an understatement. The assertive phrasing, coupled with the specific, repetitive, and urgent nature of these statements, as well as the conviction with which they were allegedly made, all backed by

Klioner's extensive real estate experience, is precisely what Heliac alleges induced it to sell. Taken together, the allegations of the Heliac Lawsuit show that in pressuring Heliac to sell the St. Regis Condo, Klioner repeatedly guaranteed the South Florida real estate market *would* crash and the value of the St. Regis Condo *would* plummet. That his guarantees concerned speculative future economic conditions that subsequently turned out to be inaccurate does not change the nature of Klioner's alleged statements from "guarantees" to mere advice.

### iii. Klioner's Alleged Statements Trigger the Future Value Exclusion

Applying the various definitions for the terms "promise" and "guarantee" to the actual statements alleged in the Heliac Lawsuit, the only reasonable conclusion is that the Market Value Damages arise out of Klioner's alleged promises and guarantees regarding the future status, performance or valuation of the real estate market and the St. Regis Condo. These allegations fall squarely within the Future Value Exclusion.

The Future Value Exclusion does not require that a statement rise to the level of a "warranty" or "legal contract" before it applies. Instead, it is triggered by Claims arising out of "*Any guarantee or promise*[.]" App 114 (D.E. 47-4, p. 13) (emphasis added). The District Court's finding that Klioner's definitive and aggressive statements can reasonably be read as not rising to the level of a promise or guarantee

would effectively require that an underlying complaint actually use the words "promise" or "guarantee" in order to satisfy the Future Value Exclusion. Requiring "buzz words" to trigger an exclusion would severely curtail its effectiveness, since it could be circumvented through artful pleading. "Buzz words" are not sufficient to trigger a duty to defend. *See Amerisure Ins*., 771 So. 2d at 582. They should likewise not be required to trigger a policy exclusion. Because Klioner's alleged misrepresentations clearly satisfy the lay and legal definitions of "promise" and "guarantee," the allegations of the Heliac Complaint trigger the Future Value Exclusion. General Star thus has no duty to defend One Sotheby's.

## B. Limiting the Future Value Exclusion to Statements Regarding Discernable Facts Renders the Exclusion Meaningless

The District Court acknowledged that "General Star's view on the conviction and certainty the [Heliac] Lawsuit ascribes to Klioner's representations is not an unreasonable one[,]" but found that One Sotheby's interpretation of Klioner's misrepresentations as mere "errors in advice" is also reasonable. App. 185-86 (D.E. 92, pp. 16-17). The District Court did not explain how "errors in advice" are distinct from "promises" or "guarantees." Rather, the District Court simply found that:

> Under this perspective, Klioner was not speaking about discernable **facts**, such as the characteristics of other homes (e.g., square footage, number of bedrooms, view of the ocean, etc.) and the actual sale prices for those homes. Rather, he was speaking about speculative future economic events. No person is able to fully and definitively predict whether the U.S. economy will either improve or worsen in the

upcoming weeks or months. Nor does the [Heliac] Lawsuit contain language which unequivocally transform these opinion-type statements into promises or guarantees.

*Id.* (emphasis in original). This reasoning fundamentally misunderstands and misconstrues the Future Value Exclusion.

As a preliminary matter, Klioner is alleged to have made statements concerning actual sale price, which is one of the "discernable facts" identified by the District Court. Specifically, Klioner is alleged to have told Heliac that $4.2 million was the most that it could obtain for the St. Regis Condo. App. 038 (D.E. 47-1, p. 10). More importantly, however, the Future Value Exclusion is not limited to Claims caused by "a guarantee or promise concerning discernable facts" but extends to Claims arising out of "Any guarantee or promise of future status, performance or valuation[.]" App. 114 (D.E. 47-4, p. 13).

The District Court stated that insurance policies must be construed broadly and exclusions narrowly. App. 185 (D.E. 92, p. 16). However, a court "cannot place limitations upon the plain language of a policy exclusion simply because we may think it should have been written that way." *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1138-39 (Fla. 1998) (internal quotation and citation omitted). "[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an

exclusionary provision." *Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla. 5th DCA 1996).

Here, the Future Value Exclusion precludes coverage for "any" Claim which arises out of "Any guarantee or promise of future status, performance or valuation[.]" App. 114 (D.E. 47-4, p. 13). There is no limitation or carve-back that requires qualifying statements to concern discernable facts instead of speculative future events. Nor is such a limitation legally justified. *See Schenley*, 122 N.E. at 191 (finding that a "promise" includes "[w]ords which in terms promise the happening or failure to happen of something not within human control"). The District Court's rationale for finding One Sotheby's' view of Klioner's statements as reasonable accordingly has no basis in law or the language of the Future Value Exclusion. Rather, in straining to accept the view of One Sotheby's as reasonable, the District Court unreasonably constrained the Future Value Exclusion as being triggered by unequivocal statements of discernable facts rather than "Any promise or guarantee of future status, performance or valuation[.]" App. 114 (D.E. 47-4, p. 13).

If alleged statements must concern discernable facts in order to trigger the Future Value Exclusion, the Exclusion would be virtually meaningless. Whether a statement qualifies as a promise or guarantee is judged at the time the statement is made, and this determination is not impacted by future developments that

subsequently render the statement inaccurate. The very purpose of the Future Value Exclusion is to preclude coverage for Claims arising out of these type of inaccurate promises or guarantees concerning future speculative economic events which are ubiquitous in the real estate industry. It is precisely because no realtor can fully and definitively predict the future value, status, or performance of the market – but *is* able to make such promises or guarantees to induce a sale – that professional liability policies exclude coverage for such losses. If a realtor's promise or guarantee about the future value of a property were accurate, there would be no basis for a Claim arising from that promise or guarantee. Rather, the Future Value Exclusion is relevant only when the promise or guarantee as to future value, status, or performance – which is necessarily speculative in nature – turns out to be incorrect.

The District Court's unreasonable interpretation is contrary to both the purpose and plain language of the Future Value Exclusion, and renders it meaningless. Insurance policies should not be interpreted in a manner which would render a clause meaningless. *See Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). "[T]he most important factor[]" in interpreting insurance policies is to give meaning to the plain language of the policy. *James River*, 540 F.3d at 1274. Because the District Court's decision runs contrary to both these principles, it is inconsistent with Florida law and should be reversed.

## CONCLUSION

The District Court erred in finding that General Star has a duty to defend One Sotheby's. The allegations of the Heliac Complaint cannot be fairly read as seeking a recovery for the type of damages covered by the Policy. The Policy unquestionably precludes coverage for conversion and for damages arising from promises or guarantees concerning future market status, performance or valuation. Because the converted proceeds and the Market Value Damages as alleged in the Heliac Complaint fall squarely within the Policy's Conversion Exclusion and Future Value Exclusion, General Star has no duty to defend One Sotheby's.

For the reasons expressed above, General Star respectfully requests that this Court reverse the judgment of the District Court, and grant summary judgment for General Star.

Date: May 24, 2023

Respectfully Submitted,

*s/ Sabina Danek*
Sabina Danek
Anthony D'Agostino
David Wilford
Wilford LLP

Cindy Ebenfeld
Hicks, Porter, Ebenfeld & Stein, P.A.

*Attorneys for Appellant*
*General Star National Insurance Company*

# CERTIFICATE OF COMPLIANCE

**1. Type-Volume**

This document complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 10,595 words.

**2. Typeface and Type-Style**

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).

Dated:     May 24, 2023

*s/ Sabina Danek*
Sabina Danek

*Attorney for General Star National Insurance Company*

## CERTIFICATE OF SERVICE

I certify that on May 24, 2023, Appellant's Initial Brief was filed via the CM/ECF system and served by e-mail to counsel for all parties to this appeal. I further certify that this Opening Brief was sent via U.S. Mail to Gleb Klioner at the following address: 4045 Sheridan Avenue, Unit 322, Miami Beach, FL 33140.


*s/ Sabina Danek*
Sabina Danek