CASE NO.: 23-11064-A

UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

GENERAL STAR NATIONAL INSURANCE COMPANY,

*Plaintiff-Appellant,*

**vs.**

MDLV, LLC d/b/a ONE SOTHEBY'S INTERNATIONAL REALTY, et al.,

*Defendant-Appellees.*

On Appeal from the United States District Court, Southern District of Florida
Case No.: 1:21-cv-24284-FAM

ANSWER BRIEF OF APPELLEE

June 30, 2023

Stephen A. Marino, Jr., Esq.
Christine A. Gudaitis, Esq.
Alessia A. Rocha, Esq.
Ver Ploeg & Marino, P.A.
100 S.E. Second Street, Suite 3300
Miami, Florida 33131
305-577-3996
305-577-3558 *facsimile*

## CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT

MDLV, LLC d/b/a One Sotheby's International Realty, pursuant to Eleventh Circuit Rule 26.1, certifies that the following additional persons and entities have or may have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1. Belchenko, Esq., Olesia Y.

2. Berkshire Hathaway Inc. (BRK.A)

3. Budnik, Esq., Carolyn N.

4. Carolyn N. Budnik, PLLC

5. D'Agostino, Esq., Anthony J.

6. Danek, Esq., Sabina

7. Ebenfeld, Esq., Cindy L.

8. General Re Corporation

9. General Reinsurance Corporation

10. General Star National Insurance Company

11. Goodman, Magistrate Judge Jonathan

12. Gudaitis, Esq., Christine A.

13.  Heliac, Inc.

14.  Hicks, Porter, Ebenfeld & Stein, P.A.

15.  Klioner, Gleb

16.  Marino, Jr., Esq., Stephen A.

17.  Moreno, Judge Frederico A.

18.  MDLV, LLC d/b/a One Sotheby's International Realty

19.  Olesia Y. Belchenko, P.A.

20.  Rocha, Esq., Alessia A.

21.  Standnikov, Kirill

22.  Ver Ploeg & Marino, P.A.

23.  Wilford, Esq., David A.

24.  Wilford LLP

25.  Zorina, Tatiana

## <u>Corporate Disclosure Statement</u>

MDLV, LLC d/b/a One Sotheby's International Realty is a Florida limited liability company which does not have a parent corporation. Neither MDLV, LLC nor its members are publicly traded on any stock exchange.

Upon information and belief, General Star National Insurance Company is a wholly-owned subsidiary of General Reinsurance Corporation, which, in turn, is wholly owned by its parent company, General Re Corporation. General Re

Corporation is a direct, wholly-owned subsidiary of Berkshire Hathaway Inc., a publicly-held corporation listed on the New York Stock Exchange under stock symbol BRK.A. Berkshire Hathaway Inc. indirectly owns 100% of General Star National Insurance Company. There are no other publicly-held companies that own 10% or more of Plaintiff's stock other than those disclosed herein.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee, MDLV, LLC d/b/a One Sotheby's International Realty, expects the parties' briefs will adequately address the issues raised in this appeal, but welcomes the opportunity to present argument at this Court's discretion.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT ........................................................................ C-1

STATEMENT REGARDING ORAL ARGUMENT ................................................ i

TABLE OF CONTENTS ...................................................................................... ii

TABLE OF CITATIONS ................................................................................... iv

STATEMENT OF THE ISSUES ......................................................................... 1

STATEMENT OF THE CASE ............................................................................ 1

SUMMARY OF THE ARGUMENT ................................................................... 3

ARGUMENT ..................................................................................................... 4

I.     THE DISTRICT COURT CORRECTLY DETERMINED THAT GENERAL STAR HAS A DUTY TO DEFEND ONE SOTHEBY'S BECAUSE THE UNDERLYING LAWSUIT INCLUDES ALLEGATIONS WITHIN THE POLICY'S COVERAGE. .................. 4

II.    THE DISTRICT COURT CORRECTLY CONCLUDED THAT GENERAL STAR FAILED TO ESTABLISH THAT ALL FAIR READINGS OF THE UNDERLYING LAWSUIT FALL WITHIN THE CONVERSION EXCLUSION .......................................... 6

A.     General Star cannot demonstrate that all allegations in the Underlying Lawsuit are cast solely and entirely within the Conversion Exclusion. ............. 6

B.     The Underlying Lawsuit alleges Klioner's misrepresentations were made to induce a sale and collect a commission, not as part of a conversion scheme. ........................................................................................... 13

C.     The Conversion Exclusion is subject to a narrower interpretation than General Star's interpretation. ........................................................................... 15

III.   THE DISTRICT COURT CORRECTLY CONCLUDED THE FUTURE VALUE EXCLUSION DOES NOT ABSOLVE GENERAL STAR OF ITS DUTY TO DEFEND. ........ 19

A.     The District Court correctly concluded the Underlying Lawsuit does not contain language that unequivocally transforms Klioner's statements into promises or guarantees. ............................................................................... 19

B. General Star distorts the District Court's findings. .................................23

C. General Star cannot conclusively demonstrate that "promises" or "guarantees" by Klioner preclude coverage for One Sotheby's. ......................24

CONCLUSION ..........................................................................................................26

CERTIFICATE OF COMPLIANCE ......................................................................26

CERTIFICATE OF SERVICE ...............................................................................27

# TABLE OF CITATIONS

**Federal Cases**

*Addison Ins. Co. v. 4000 Island Boulevard Condo. Ass'n, Inc.*,
721 F. App'x 847 (11th Cir. 2017) ........................................................4

*Carithers v. Mid-Continent Cas. Co.*,
782 F.3d 1240 (11th Cir. 2015) ................................................. 11, 15

*Clarendon Nat'l Ins. Co. v. Vickers*,
265 F. App'x 890 (11th Cir. 2008) ........................................... 2, 5, 6

*Colorado Boxed Beef Co., Inc. v. Evanston Ins. Co.*,
No. 818CV01237T02JSS, 2018 WL 5312026 (M.D. Fla. Oct. 26, 2018) ... 10, 11

*Evanston Ins. Co. v. Budget Grp. Inc.*,
199 F. App'x 867 (11th Cir. 2006) ......................................................18

*Evanston Ins. Co. v. Gaddis Corp.*,
145 F. Supp. 3d 1140 (S.D. Fla. 2015) ................................................2

*First Specialty Ins. Corp. v. 633 Partners, Ltd.*,
300 F. App'x 777 (11th Cir. 2008) ......................................................14

*Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*,
420 F.3d 1317 (11th Cir. 2005) ......................................................7, 8

*Hallums v. Infinity Ins. Co.*,
945 F.3d 1144 (11th Cir. 2019) ............................................. 4, 11, 12

*Houston Specialty Ins. Co. v. Fenstersheib*,
No. 20-60091-CIV, 2022 WL 4880148 (S.D. Fla. Sept. 30, 2022)............... 9, 10

*James River Ins. Co. v. Cantrell*,
No. 6:19-cv-1398-Orl-41LRH, 2020 WL 3035237
(M.D. Fla. Mar. 26, 2020)..................................................................12

*James River Ins. Co. v. Ground Down Eng'g, Inc.*,
540 F.3d 1270 (11th Cir. 2008) ...........................................................9

*Kopelowitz v. Home Ins. Co.*,
977 F. Supp. 1179 (S.D. Fla. 1997) ....................................................5

*Laws. Title Ins. Corp v. JDC (Am.) Corp.*,
  52 F.3d 1575 (11th Cir. 1995) .......................................................................25

*Mid-Continent Cas. Co. v. Am. Pride Bldg. Co.*,
  601 F.3d 1143 (11th Cir. 2010) ....................................................................15

*Northland Cas. Co. v. HBE Corp.*,
  160 F. Supp. 2d 1348 (M.D. Fla. 2001)........................................................22

**State Cases**

*Acosta Inc. v. Nat'l Union Fire Ins. Co.*,
  39 So. 3d 565 (Fla. 1st DCA 2010) ........................................................ 5, 23

*Auto-Owners Ins. Co. v. Anderson*,
  756 So. 2d 29 (Fla. 2000)........................................................................ 17, 25

*Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*,
  470 So. 2d 810 (Fla. 1st DCA 1985) ...................................................... 15, 20

*Castillo v. State Farm Fla. Ins. Co.*,
  971 So. 2d 820 (Fla. 3d DCA 2007) ........................................................ 5, 23

*First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co.*,
  695 So. 2d 475 (Fla. 3d DCA 1997) ..............................................................15

*Mactown, Inc. v. Cont'l Ins. Co.*,
  et. al., 716 So. 2d 289 (Fla. 3d DCA 1989) ....................................................8

*MCO Env't, Inc. v. Agric. Excess & Surplus Ins. Co.*,
  689 So. 2d 1114 (Fla. 3d DCA 1997) ..............................................................5

*Sunshine Birds and Supplies, Inc. v. U.S. Fid. & Guar. Co.*,
  696 So. 2d 907 (Fla. 3d DCA 1997) ...........................................................5, 8

**Federal Rules**

11th Cir. R. 26.1 ...............................................................................................C-1

Fed. R. App. P. 32 .............................................................................................26

**Other Authorities**

*Advice*, dictionary.com,
https://www.dictionary.com/browse/advice (last visited June 19, 2023)............19

*Pressure*, dictionary.com,
https://www.dictionary.com/browse/pressure (last visited June 19, 2023).........19

## STATEMENT OF THE ISSUES

1.      Did the District Court correctly determine that General Star National Insurance Company ("General Star") has a duty to defend MDLV, LLC d/b/a One Sotheby's International Realty ("One Sotheby's") in the underlying lawsuit?

## STATEMENT OF THE CASE

General Star seeks a determination that it does not owe a duty to defend and indemnify its insured, One Sotheby's, under insurance Policy No. NJA363443A ("Policy") in a lawsuit brought by Heliac, Inc., a former client of One Sotheby's. On April 11, 2022, Heliac filed an amended complaint against One Sotheby's, now the operative complaint for purposes of the duty to defend analysis ("Underlying Lawsuit"). ECF No. 47-1. The Underlying Lawsuit asserts counts against One Sotheby's for negligent misrepresentation, negligent employee hiring, negligent employee training, vicarious liability for conversion, and breach of duties in violation of section 475.25(1)(b), Florida Statutes. *Id.*

The Policy provides coverage for Claims arising out of any act, error, omission or personal injury in the rendering of or failure to render professional services by an insured. Policy, ECF No. 47-4 at 6. "Professional services means services performed by an Insured in an Insured's capacity as a real estate agent, real estate broker, real estate appraiser, real estate consultant, real property auctioneer, or Property Manager . . . ." *Id.* at 17. General Star acknowledges that the Underlying

Lawsuit qualifies as a Claim arising from an act, error, or omission in the rendering of Professional Services by an Insured. Appellant's Br. at 22. General Star nonetheless argues it does not have a duty to defend One Sotheby's by operation of the Conversion Exclusion and the Future Value Exclusion. *Id.* at 22-23.[1]

On November 10, 2022, One Sotheby's moved for judgment on the pleadings. ECF No. 74. On December 7, 2022, General Star moved for summary judgment. Both motions involved the issues of General Star's duties to defend and indemnify. On January 5, 2023, the Honorable United States Magistrate Judge Jonathan Goodman issued an Amended Report and Recommendations and recommended that the District Court grant One Sotheby's Motion for Judgment on the Pleadings on General Star's duty to defend and dismiss General Star's request for a declaratory judgment on the duty to indemnify as premature. ECF No. 93 at 18. On January 10, 2023, Magistrate Judge Goodman issued a Report and Recommendations

---

[1] General Star argues "One Sotheby's does not dispute there is no coverage for [some] counts." Appellant's Br. at 20 n. 3. Because General Star has the burden of proving that an exclusion applies to disclaim its duty to defend, One Sotheby's finds it unnecessary to address all counts. One Sotheby's uses Count I and Count III to show that there is at least one allegation in the Underlying Lawsuit that is potentially within coverage, and General Star must therefore defend the entire suit. *See Clarendon Nat'l Ins. Co. v. Vickers*, 265 F. App'x 890, 891 (11th Cir. 2008). This should not be interpreted as an admission by One Sotheby's that there is no coverage for the remaining counts, as a determination on General Star's duty to indemnify is premature. *See Evanston Ins. Co. v. Gaddis Corp.*, 145 F. Supp. 3d 1140, 1153 (S.D. Fla. 2015).

recommending that the District Court deny General Star's Summary Judgment Motion regarding the same issues. ECF No. 98. On January 26, 2023, the District Court entered an Order Adopting Magistrate Judge's Report and Recommendations and denying Plaintiff's Motion for Partial Summary Judgment. ECF No. 103. On February 3, 2023, the District Court entered an Order Granting Defendant's Motion for Judgment on the Pleadings and Adopting Magistrate Judge's Report and Recommendations. ECF No. 105. On March 3, 2023, the District Court entered Final Judgment holding that General Star has a duty to defend One Sotheby's and dismissing as premature General Star's request for a determination on its duty to indemnify. ECF No. 111.[2] This appeal followed.

## SUMMARY OF THE ARGUMENT

The District Court correctly held that based on the allegations of the Underlying Lawsuit and Policy, General Star has a duty to defend One Sotheby's in the Underlying Lawsuit. Under Florida's "eight corners rule," an insurer is obligated to defend its insured whenever the operative complaint alleges facts which actually or potentially fall within the scope of coverage. General Star seeks to evade its coverage obligations based on two exclusions, the Conversion Exclusion and the

---

[2] General Star does not dispute the District Court's dismissal of its request for a declaration on its duty to indemnify.

Future Value Exclusion. The allegations in the operative complaint, however, plainly fall (at least in part) within coverage.

While General Star's interpretation of the Conversion Exclusion might be reasonable, it is not the only reasonable interpretation. Similarly, General Star's interpretation of the Future Value Exclusion might also be reasonable, but it is not the only reasonable one. General Star cannot show that the Conversion Exclusion and the Future Value Exclusion unequivocally exclude coverage for all allegations in the Underlying Lawsuit. General Star must therefore defend One Sotheby's in the Underlying Lawsuit.

## ARGUMENT

### I. THE DISTRICT COURT CORRECTLY DETERMINED THAT GENERAL STAR HAS A DUTY TO DEFEND ONE SOTHEBY'S BECAUSE THE UNDERLYING LAWSUIT INCLUDES ALLEGATIONS WITHIN THE POLICY'S COVERAGE.

Whether an insurer has a duty to defend depends on the allegations contained in the complaint against its insured. *See Addison Ins. Co. v. 4000 Island Boulevard Condo. Ass'n, Inc.*, 721 F. App'x 847, 854 (11th Cir. 2017). The rule is called the "eight corners rule," a reference to the four corners of the policy and the four corners of the complaint. *Id.* "[T]he central inquiry in a duty to defend case is whether the complaint alleges facts that fairly and *potentially* bring the suit within policy coverage." *Hallums v. Infinity Ins. Co.*, 945 F.3d 1144, 1149 (11th Cir. 2019)

(alteration in original) (emphasis added) (citations omitted). Where the underlying complaint alleges facts which actually or potentially fall within the scope of coverage, the insurer is obligated to defend the entire suit. *Kopelowitz v. Home Ins. Co.*, 977 F. Supp. 1179, 1185 (S.D. Fla. 1997) (citing *MCO Env't, Inc. v. Agric. Excess & Surplus Ins. Co.*, 689 So. 2d 1114, 1115 (Fla. 3d DCA 1997)). This is true even where the complaint alleges facts that are only partially within the policy's coverage. *Clarendon Nat'l Ins. Co. v. Vickers*, 265 F. App'x 890, 891 (11th Cir. 2008) (if an underlying complaint "contains at least one allegation with respect to which there would be coverage, then the insurance company must defend the entire suit"); *Sunshine Birds and Supplies, Inc. v. U.S. Fid. & Guar. Co.*, 696 So. 2d 907, 910 (Fla. 3d DCA 1997) (same). Any doubt about the duty to defend must be resolved in favor of the insured. *MCO Env't, Inc.*, 689 So. 2d at 1115.

Where an insurer seeks to avoid providing a defense based on an exclusion, the insurer "has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation." *Castillo v. State Farm Fla. Ins. Co.*, 971 So. 2d 820, 824 (Fla. 3d DCA 2007); *Acosta Inc. v. Nat'l Union Fire Ins. Co.*, 39 So. 3d 565, 574 (Fla. 1st DCA 2010). General Star concedes that the Underlying Lawsuit's allegations fall within the insuring agreement. Appellant's Br. at 22. But General Star has failed to meet its burden to conclusively show that the allegations in the

Underlying Lawsuit fall solely and entirely within Policy exclusions and can be attributed to no other reasonable interpretation.

The Underlying Lawsuit seeks judgment against One Sotheby's for "damages resulting from the broker's negligence." ECF No. 47-1 at ¶ 1. While the Underlying Lawsuit is "*also* against [One Sotheby's] real estate sales associate – Klioner – for misappropriation of over $3.7 million in real estate sale proceeds[,]" it includes allegations separate from the alleged misappropriation. *Id.* at ¶ 2 (emphasis added). For example, it includes allegations of negligent misrepresentations and negligent employee training resulting in loss of proceeds from the sale. Because the Underlying Lawsuit includes at least one allegation that actually or potentially falls within the Policy's coverage, General Star must defend the entire lawsuit. *Vickers*, 265 F. App'x at 891.

## II. THE DISTRICT COURT CORRECTLY CONCLUDED THAT GENERAL STAR FAILED TO ESTABLISH THAT ALL FAIR READINGS OF THE UNDERLYING LAWSUIT FALL WITHIN THE CONVERSION EXCLUSION

### A. General Star cannot demonstrate that all allegations in the Underlying Lawsuit are cast solely and entirely within the Conversion Exclusion.

General Star's interpretation of the Policy and Underlying Lawsuit does not change the District Court's conclusion: General Star is unable to meet its burden to establish that *all* fair readings of the Underlying Lawsuit fall within the Conversion Exclusion. ECF No. 93 at 13. This is because "[i]t is just as plausible, based on a fair

reading of the Underlying Complaint, that Klioner did not decide to convert the funds until after the sale had occurred. And, if Klioner did not decide to convert the funds until *after* the sale, then the preceding actions – and the damages caused by the market differences – could not have *arisen from* the conversion." *Id.* at 11. The Court correctly found that the damages caused by the market differences could not have arisen from a "dispute involving" conversion where there was no conversion yet contemplated or acted on.

As the District Court explained, "[t]he mere fact that two harms may arise from the same underlying facts does not mean that the two harms arise from each other." *Id.* The Court compared this to a homeowner's insurance contract that excludes damage arising out of a flood. The Court explained that the insurer would not be required to reimburse the homeowner for damage caused by a flood created by the heavy rain of a hurricane but would be required to cover damage to the roof caused by a fallen tree ("created by the same hurricane which caused the tree to fall"). *Id.* at 11-12.

General Star uses the same hypothetical to argue, without any supporting authority, that if the insurance contract precluded coverage "for any claim arising from damage *involving* a flood, then it *would* preclude coverage for the damage caused by the fallen tree during a hurricane." Appellant's Br. at 37. That is simply not the law. *See, e.g., Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church,*

*Inc.*, 420 F.3d 1317, 1330 (11th Cir. 2005) ("Florida's concurrent cause doctrine permits coverage under an insurance policy when the loss can be attributed to multiple causes, as long as one of the causes is an insured risk.") (citations omitted). And it is not enough to absolve General Star of its duty to defend. *See Sunshine Birds and Supplies*, 696 So. 2d at 910 ("It is further clear in this area of the law that where a complaint alleges facts that are partially within and partially outside the coverage of an insured's policy, the insurer is not only obligated to defend, but must defend that entire suit.").

In *Mactown, Inc. v. Continental Insurance Co., et. al.*, 716 So. 2d 289 (Fla. 3d DCA 1989), the underlying plaintiff sued an employee of Mactown for battery and sued Mactown, the insured, for both respondeat superior and negligent retention. Mactown's policy excluded coverage for claims "based on, directly or indirectly resulting from, in consequence of, or *in any way involving* . . . bodily injury . . . damage or destruction of any tangible property including loss of use thereof, or . . . battery . . . ." *Id.* at 291 (emphasis added). The court held the negligent retention claim against Mactown did not fall within the exclusion for claims based on or resulting from battery. *Id.* The court held the list of intentional torts, such as battery, did not include the insured's negligent retention of the employee, deeming the exclusion "at best, ambiguous" and therefore construed in favor of coverage and triggering the insurer's duty to defend. *Id.* at 292.

General Star's reliance on *Houston Specialty Ins. Co. v. Fenstersheib*, No. 20-60091-CIV, 2022 WL 4880148 (S.D. Fla. Sept. 30, 2022) is misplaced. In *Fenstersheib*, the underlying plaintiffs sued the insured for civil theft, conversion, breach of contract, negligence, negligent retention, breach of fiduciary duty, constructive fraud, promissory estoppel, and accounting, with all of the counts being interrelated and arising from the claim that one of the insured's employees embezzled funds owed to plaintiffs. *Id.* at *8. The policy excluded coverage for "any claims arising out of, relating to or involving improper commingling of client funds, conversion of anyone's funds, theft of anyone's funds, the wire transfer of anyone's funds . . . a counterfeit check or a check bearing anyone's forged or bogus signature." *Id.* at *6.

The *Fenstersheib* court explained that the phrase "arising out of" "means 'originating from,' having its origin in,' 'growing out of,' 'flowing from,' 'incident to,' or 'having a connection with.' To have arisen out of something, there must be 'some causal connection, or relationship[,]' that is 'more than a mere coincidence' but proximate cause is not required." *Id.* at *7 (quoting *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1275 (11th Cir. 2008)). The underlying complaint alleged the losses were "based on" fraudulent closing statements and/or the fraudulent scheme. *Id.* at *8-11. The court found that all claims "originated from"

the alleged fraud and all allegations relating to plaintiffs' "harm" were "based on" the alleged fraud. *Id.* at *8.

*Fenstersheib* is distinguishable because here, the Underlying Lawsuit does not include any allegations that the Market Value Damages were "based on" anything involving conversion. General Star's argument that the Conversion Exclusion applies to "any dispute involving any Insured's conversion," does not change the Policy requirement that claims must still "arise out of" that dispute involving conversion. As the Court made clear, "[i]t would be illogical to assume that the market loss *arose* from a conversion which did not occur until *after* the market loss was generated." ECF No. 93 at 12. The claimed Market Value Damages would still exist in the absence of any subsequent conversion.

General Star also relies on *Colorado Boxed Beef Co., Inc. v. Evanston Insurance Co.*, No. 818CV01237T02JSS, 2018 WL 5312026 (M.D. Fla. Oct. 26, 2018) to argue, "[t]hat the Market Value Damages *could* be the basis for a separate and independent action, however, does not change the reality that they are not, in fact, a separate and independent claim." Appellant's Br. at 40. In *Colorado Boxed Beef*, the policy excluded claims "based upon, arising out of or in any way involving . . . the actual, alleged or attempted purchase or sale, or offer or solicitation of an offer to purchase or sell, any debt or equity securities." 2018 WL 5312026, at *2.

The underlying lawsuit concerned misrepresentations and omissions in connection with the purchase of shares, memorialized in an agreement. *Id.*

Contrary to the District Court's findings here, the *Colorado Boxed Beef* court did not find any claims that could stand alone, instead holding all allegations regarding the purchase agreement were "not only connected but central to each of the claims" and thus fell within the exclusion. *Id.* at *3. Here, the allegations of Market Value Damages could stand alone because they do not arise out of the subsequent dispute regarding Klioner's alleged conversion.

General Star further argues that because it "has found no Florida case law, or case law from any other U.S. jurisdiction, recognizing a cause of action by a seller against their real estate broker based on the sale of a property for a below-market price[,]" there is "serious doubt as to whether Heliac could assert a separate and independent claim against One Sotheby's limited solely to the Market Value Damages." Appellant's Br. at 42. The flaw in General Star's argument is that it ignores the fundamental principle that "[t]he duty to defend is of greater breadth than the insurer's duty to indemnify, and the insurer must defend even if the allegations in the complaint are factually incorrect or meritless." *Hallums*, 945 F.3d at 1148; *see also Carithers v. Mid-Continent Cas. Co.*, 782 F.3d 1240, 1246 (11th Cir. 2015) ("Given the uncertainty in the law at the time, [the insurer] did not know whether

there would be coverage for the damages sought . . . . [The insurer] was required to resolve this uncertainty in favor of the insured and offer a defense to [the insured].").

General Star's argument that the Market Value Damages could not be the basis for an independent action (an issue that was not raised or adjudicated in the Underlying Lawsuit) underscores General Star's efforts to disregard the broad duty to defend analysis and leapfrog into the duty to indemnify analysis, even though to do so would be improper because no facts have been determined in the Underlying Lawsuit. *See James River Ins. Co. v. Cantrell*, No. 6:19-cv-1398-Orl-41LRH, 2020 WL 3035237, at *2 (M.D. Fla. Mar. 26, 2020) ("[A]mong the federal district courts within the Eleventh Circuit, '[c]ase law is legion for the proposition that an insurer's duty to indemnify is not ripe for adjudication unless and until the insured or putative insured has been held liable in the underlying action.'").

The Underlying Lawsuit seeks judgment against One Sotheby's for "damages resulting from the broker's negligence" and includes allegations separate from the alleged conversion, for example, allegations of negligent misrepresentations and negligent employee training. ECF No. 47-1 at ¶ 1. Whether these damages will ultimately be awarded is irrelevant to General Star's duty to defend. *See Hallums*, 945 F.3d at 1148.

**B. The Underlying Lawsuit alleges Klioner's misrepresentations were made to induce a sale and collect a commission, not as part of a conversion scheme.**

General Star's argument that the "only fair reading" of the Underlying Lawsuit "is that Klioner's misrepresentations were made with the goal of forcing a quick sale so that he could convert the sale proceeds" is contrary to the plain allegations in the Underlying Lawsuit. Count I of the Underlying Lawsuit alleges that "Klioner made these statements apparently *believing them to be true*" and that these misrepresentations were done "to induce Heliac to sell the St. Regis Condo, and consequently, *collect a commission* from the sale of the St. Regis Condo as soon as possible." ECF No. 47-1 at ¶ 55, 60 (emphasis added). Count I contains no allegations that even suggest the alleged misrepresentations were made to subsequently convert the proceeds.

The Underlying Lawsuit also alleges Klioner misunderstood and therefore misrepresented the value of plaintiffs' property and, as a result, plaintiffs incurred damages in the form of the difference between the market price of the property and its sale price. *Id.* at ¶ 55, 64. These allegations and damages would be covered under the Policy and do not fall under any exclusion.

While General Star argues that the Conversion Exclusion precludes coverage for claims arising out of disputes involving conversion of funds, a finding of One Sotheby's vicarious liability for Klioner's "negligent misrepresentations and poor

advice" resulting in Market Value Damages would be independent of any allegations of Klioner's conversion of funds. At the very least, this would be partially within the Policy's coverage. These allegations are sufficient to create a duty to defend. *See First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 F. App'x 777, 784 (11th Cir. 2008) (finding duty to defend where allegations of false imprisonment did not necessarily fall under the assault and battery exclusion as it was "a distinct, preceding incident that did not necessarily have to result in her assault and battery, even if that was a potential outcome").

General Star does not – because it cannot – show that all alleged theories of liability are excluded by the Policy. For example, Count III of the Underlying Lawsuit alleges One Sotheby's "owed a duty to Heliac to properly and adequately train its sales associates" and "failed to property [sic] and adequately train Klioner[,]" resulting in Heliac being "damaged to the extent of the difference between the market price of the [property] and its sale price . . . ." ECF No. 47-1 at ¶¶ 74-75, 78. These allegations, that do not involve Klioner's subsequent conversion of funds, trigger coverage under the Policy. If proven, they would constitute negligence by One Sotheby's in training its employees, resulting in damages incurred in the form of sale proceeds below market price. Count III does not allege One Sotheby's negligent training arose out of a dispute regarding Klioner's conversion; it alleges damages incurred independently of Klioner's conversion.

Under Florida law, "if the complaint alleges facts showing two or more grounds for liability, one being within the insurance coverage and the other not, the insurer is obligated to defend the entire suit." *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 814 (Fla. 1st DCA 1985) (collecting cases). Because the Underlying Lawsuit includes theories of liability that actually or potentially fall within coverage, General Star must defend the entire suit.

As Magistrate Judge Goodman recognized, General Star cannot show with certainty that coverage does *not* exist and is therefore obligated to defend One Sotheby's in the Underlying Lawsuit. *Carithers*, 782 F.3d at 1246 ("[the insurer] was required to offer a defense in the underlying action unless it was certain that there was no coverage for the damages sought by the [insureds] in the action"); *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co.*, 601 F.3d 1143, 1149 (11th Cir. 2010) ("an insurer is obligated to defend a claim even if it is uncertain whether coverage exists under the policy") (quoting *First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co.*, 695 So. 2d 475, 476 (Fla. 3d DCA 1997)).

### C. The Conversion Exclusion is subject to a narrower interpretation than General Star's interpretation.

General Star complains that the "District Court did not give proper weight to the phrase 'Any disputes involving[,]' which considerably broadens the scope of the Conversion Exclusion." Appellant's Br. at 33. But this is not the only way to read the Policy. The Policy states:

The Company has no obligation under this Policy to pay **Damages** or **Claims Expenses** or to provide a defense, in connection with any **Claim(s)**:

A. Under any part of this Policy if based on or arising out of the following:

    1. Any:

    a. Dishonest, fraudulent, criminal, knowingly wrongful, willful, malicious or intentional act, error, omission or **Personal Injury**;

    b. Intentional misrepresentation; or

    c. Willful, intentional or knowing violation of the laws, statutes, rules or regulations (including, but not limited to the Racketeer Influenced and Corrupt Organizations Act (RICO), or other actual or alleged violations of state or federal anti-trust, price-fixing, restraint of trade or deceptive trade practice laws, rules or regulations).

However, this exclusion shall not apply to strictly vicarious liability of an innocent **Insured**, whose conduct, as stated in this exclusion, was not committed by, at the direction of or with the knowledge of such innocent **Insured**.

. . .

    2. Any disputes involving any **Insured's** fees, commissions or charges, the failure to pay or collect premium, escrow or tax money, or the conversion, misappropriation, commingling or embezzlement of funds or other property. However, in the event a **Claim** is made against an **Insured** seeking both the return of escrow money and alleging an act, error, omission or **Personal Injury** in the performance of **Professional Services** covered under this Policy, the Company will defend such Claim without any obligation to reimburse the **Insured** for the payment of monies held as escrow.

. . .

Policy, ECF No. 47-4 at 11.

This exclusion, however, can also be read to say that coverage is precluded for "any Claim(s) . . . if based on or arising out . . . conversion." If General Star, as drafter of the Policy, wanted to make clear that the Conversion Exclusion applied to "any disputes involving . . . conversion[,]" it should have drafted the Policy accordingly. *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 36 (Fla. 2000) (finding that in determining whether policy language is ambiguous, if different language was available that would have accomplished the insurer's present objective, the failure to use that language is proof of the insurer's intent not to restrict coverage and of ambiguity).

Instead, Exclusion A(1) (the "Dishonesty Exclusion") above the Conversion Exclusion, makes it clear that claims arising out of "*Any:* dishonest act[,]" "*Any:* . . . intentional misrepresentation[,]" or "*Any:* . . . Willful, intentional or knowing violation of the laws" are excluded. Meanwhile the Conversion Exclusion is phrased to be read as "[a]ny disputes involving any Insured's fees, commissions or charges, . . . *or* the conversion, misappropriation, commingling, or embezzlement of funds or other property." Policy, ECF No. 47-4 at 11 (emphasis added). Based on this reading alone, General Star cannot deny its duty to defend. General Star relies solely on the phrase "any disputes involving" to broaden the exclusion and argue that the

Conversion Exclusion is "not limited to Claims arising out of a conversion."[3] Appellant's Br. at 35. But "[t]he law in Florida is that insurance coverage must be construed broadly and its exclusions narrowly." *Evanston Ins. Co. v. Budget Grp. Inc.*, 199 F. App'x 867, 868 (11th Cir. 2006).

The District Court did not "impermissibly modif[y] the Exclusion" as General Star argues. *Id.* Magistrate Judge Goodman's Amended Report and Recommendations adopted by Judge Moreno considered the phrase "any disputes involving" and analyzed both the phrases "arising out of" and "involving" in reaching a conclusion. ECF No. 93 at 10-11. Judge Goodman concluded, and Judge Moreno agreed, that General Star was "unable to meet its burden to establish that *all* fair readings of the Underlying Lawsuit fall within the Conversion Exclusion." *Id.* at 13.

---

[3] General Star does not argue that the allegations can be interpreted to have arisen from the alleged conversion. Rather, General Star argues the District Court did not give "proper weight" to the phrase "any disputes involving," which "extends [the exclusion] to Claims arising out of any disputes *involving* a conversion." Appellant's Br. at 33-35.

### III. The District Court Correctly Concluded the Future Value Exclusion Does Not Absolve General Star of Its Duty to Defend.

#### A. The District Court correctly concluded the Underlying Lawsuit does not contain language that unequivocally transforms Klioner's statements into promises or guarantees.

General Star argues the "only reasonably interpretation of Klioner's statements concerning the future of the South Florida real estate market and its impact on the value of the St. Regis Condo is that those statements constitute 'promises' or 'guarantees' sufficient to trigger the Future Value Exclusion." Appellant's Br. at 42-43. But the Underlying Lawsuit simply does not allege One Sotheby's made guarantees or promises to Heliac regarding the future value of the St. Regis Condo.

The Underlying Lawsuit characterizes Klioner's statements and behavior as "advice" and "pressur[e]." ECF No. 47-1 at ¶ 26, 31. "Advice" is defined as "an opinion or recommendation offered as a guide to action, conduct, etc." *Advice*, dictionary.com, https://www.dictionary.com/browse/advice (last visited June 19, 2023). "Pressuring" means "to force (someone) toward a particular end; influence." *Pressure*, dictionary.com, https://www.dictionary.com/browse/pressure (last visited June 19, 2023).

Heliac's characterizations of Klioner's conduct are distinguishable from "guarantees" and "promises." General Star cannot point out any allegations

constituting promises or guarantees regarding the future value of the St. Regis Condo. General Star's attempt to disclaim its duty to defend based on its own strained interpretation of the Underlying Lawsuit is insufficient to meet its burden of proof. The allegations cited by General Star are properly characterized as "negligent misrepresentations and poor advice." ECF No. 47-1 at ¶ 64. At best, Heliac's characterizations of Klioner's conduct leave doubts regarding the duty to defend that must be resolved in favor of the insured. *Baron Oil Co.*, 470 So. 2d at 814.

General Star suggests Klioner's statements qualify as "promises" because they "are alleged to have given Heliac the right to expect the performance of a specified act – the crash of the real estate market and a steep decline in the value of the St. Regis Condo by March 2021." Appellant's Br. at 46. General Star misconstrues the issues. The Underlying Lawsuit does not claim damages because the real estate market did not crash and Heliac now "expect[s] the performance of a specified act – the crash of the real estate market[,]" but because Klioner "should have known that his representations . . . were false." ECF No. 47-1 at ¶ 56.

General Star cites the definition of "promises" used by the District Court: "a legally binding declaration that gives the person to whom it is made a right to expect or to claim the performance of forbearance of a specified act." Appellant's Br. at 43; ECF No. 93 at 15. General Star claims the Underlying Lawsuit "implicitly alleges

that Klioner's statements were legally binding" because "the very basis for the Market Value Damages is the premise that Heliac purportedly suffered a legally actionable injury because these statements turned out to be inaccurate[,]" and that "[i]f the statements were not legally binding, whether based on Klioner's fiduciary status or otherwise, there would be no actionable injury." Appellant's Br. at 47. General Star ignores the difference between a legally binding statement and a statement of opinion that, in a fiduciary context, may become actionable (such as an investment advisor recommending purchase of a private equity position that is later proven to be a Ponzi scheme – the recommendation is not "legally binding" but the advice maybe be actionable against a fiduciary).

The Underlying Lawsuit seeks damages based on alleged breaches of One Sotheby's duties and negligent misrepresentations resulting in the Market Value Damages. The Underlying Lawsuit does not include any claims against Klioner for those damages. And without "legally binding" statements by Klioner, there would still be actionable injury: damages as a result of negligent misrepresentations, negligent employee hiring, negligent employee training, vicarious liability for conversion, and all counts against Klioner that do not involve any "legally binding" statements.

General Star's argument that "the Underlying Lawsuit *implicitly* alleges that Klioner's statements were legally binding" is not enough to unilaterally categorize

Klioner's statements as "promises" and absolve it of its duty to defend. *Id.* (emphasis added). General Star's resort to forced implication is evidence that it cannot show that the allegations unequivocally fall within the Future Value Exclusion.

General Star focuses on the definitions of "promises" and "guarantees" to argue that "[b]ecause the District Court failed to perform such an analysis, its conclusion that Klioner's statements can reasonably be interpreted as not rising to the level of a 'promise' or 'guarantee' is in error." Appellant's Br. at 29. But the District Court analyzed both General Star's and One Sotheby's positions regarding these definitions and reached the conclusion that *both* interpretations are "reasonable." ECF No. 93 at 16. Therefore, because the "Underlying Lawsuit [does not] contain language which unequivocally transform these opinion-type statements into promises or guarantees" General Star failed to meet its burden to demonstrate "that the allegations of the complaint are cast solely and entirely within the policy exclusion and are *subject to no other reasonable interpretation*." *Id.* at 16-17 (citing *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1359 (M.D. Fla. 2001)) (emphasis added).

General Star, in trying to establish that Klioner's statements qualify as "promises" or "guarantees," ignores its burden to demonstrate that the allegations are subject to *only one* reasonable interpretation. Klioner's statements might be interpreted as "promises" or "guarantees," but they could also be interpreted as

covered "negligent misrepresentations and poor advice[.]" ECF No. 47-1 at ¶ 64.

Magistrate Judge Goodman fairly read both sides' interpretations and found them both reasonable. Judge Moreno then "reviewed the entire file and record[,]" "made a *de novo* review of the issues[,]" and agreed with Magistrate Judge Goodman. ECF No. 103 and 105. Because One Sotheby's interpretation is reasonable, the "Future Value Exclusion does not absolve General Star of its duty to defend." ECF No. 93 at 16-17; *see Castillo*, 971 So. 2d at 824; *Acosta Inc.*, 39 So. 3d at 574.

## B. General Star distorts the District Court's findings.

General Star distorts the District Court's findings in arguing that "the District Court unreasonably constrained the Future Value Exclusion as being triggered by unequivocal statements of discernable facts . . . ." Appellant's Br. at 52. The District Court did not conclude that Klioner's alleged statements were not promises or guarantees because they were not about discernable facts, nor that the promises or guarantees had to be about discernable facts. Magistrate Judge Goodman instead concluded, "[t]he interpretation of the Underlying Lawsuit One Sotheby's advances – that Klioner's alleged misrepresentations were errors in advice, not 'guarantees' or 'promises' – is reasonable." ECF No. 93 at 17. Judge Goodman further explained that while it may later be established that Klioner made "promises" or "guarantees," "the facts contained in the Underlying Lawsuit do not make clear that Klioner made

any 'promises' or 'guarantees.' Accordingly, the Future Value Exclusion does not absolve General Star of its duty to defend." *Id.*

### C. General Star cannot conclusively demonstrate that "promises" or "guarantees" by Klioner preclude coverage for One Sotheby's.

Even if the Underlying Lawsuit included allegations of "promises" or "guarantees" (it does not), coverage for One Sotheby's would still exist because the claimed statements were made solely by Klioner. The Policy precludes coverage for claims arising out of "[a]ny guarantee or promise of future status, performance or valuation in the course of performing Professional Services by *the* Insured." Policy, ECF No. 47-4 at 13 (emphasis added). As such, the Policy precludes coverage for *an* insured, if the claim arises out of guarantees or promises by *that* insured.[4]

This argument is further supported by a comparison of the language used in the Dishonesty Exclusion and the Future Value Exclusion. The Dishonesty Exclusion bars coverage for claims arising out of *any* dishonesty and then includes a carve-back for an innocent insured. *Id.* at 11. at The Future Value Exclusion

---

[4] Magistrate Judge Goodman did not address this argument because it was raised for the first time in One Sotheby's Reply in support of its Motion for Judgment on the Pleadings. ECF No. 93 at 13 n. 4. This argument, however, was also raised in One Sotheby's Response to General Star's Motion for Summary Judgment. ECF No. 90 at 7-8. The basis for the Final Judgment entered in favor of One Sotheby's included the denial of General Star's Motion for Summary Judgment. Although the District Court did not address this argument, it provides an independent basis for affirming the Final Judgment in One Sotheby's favor.

precludes coverage for guarantees or promises made by *the* insured. *Id.* at 13. The only fair reading of that language limits its application to the promises made by a specific insured and not to an innocent insured.

The declaratory action concerns General Star's duty to defend One Sotheby's. The Underlying Lawsuit does not include any allegations that One Sotheby's made any promises or guarantees to Heliac. At minimum, this creates doubt as to whether One Sotheby's, an innocent insured, would be covered by the Policy if held liable for promises or guarantees made by Klioner. This doubt must be resolved in favor of One Sotheby's. *Laws. Title Ins. Corp v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580-81 (11th Cir. 1995) ("If an examination of the allegations of the complaint leaves any doubt regarding the insurer's duty to defend, the issue is resolved in favor of the insured.").

If General Star intended to preclude coverage for all insureds for promises or guarantees by *any* insured, it was incumbent upon General Star to do so unambiguously. *See Anderson*, 756 So. 2d at 34. General Star could have indicated its intentions clearly and unambiguously by using alternative language, such as the language in the Dishonesty Exclusion. *Id.* at 36. General Star cannot meet its burden of proof to show that the Policy excludes coverage for all the Underlying Lawsuit's allegations in clear, unmistakable language. General Star is therefore obligated to defend One Sotheby's in the Underlying Lawsuit.

## CONCLUSION

General Star cannot show with certainty that coverage is excluded for the Underlying Lawsuit. Because some allegations fall, at least partially or potentially, within the Policy's coverage, General Star is obligated to defend One Sotheby's in the Underlying Lawsuit. Accordingly, the District Court correctly concluded that General Star has a duty to defend One Sotheby's.

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(A)(B). This brief contains 6,058 words. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6).

Respectfully Submitted,

VER PLOEG & MARINO, P.A.
100 S.E. Second Street, Suite 3300
Miami, FL 33131
305-577-3996
305-577-3558 *facsimile*

/s/ Stephen A. Marino, Jr.
**Stephen A. Marino, Jr., Esq.**
Florida Bar No. 79170
smarino@vpm-legal.com
smcgee@vpm-legal.com
**Christine A. Gudaitis, Esq.**
Florida Bar No. 0502693
cgudaitis@vpm-legal.com
lmulhall@vpm-legal.com
**Alessia A. Rocha, Esq.**
Florida Bar No. 1025878
arocha@vpm-legal.com
*Counsel for MDLV, LLC d/b/a One Sotheby's*
*International Realty*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by CM/ECF and U.S. Mail on June 30, 2023 to:

David A. Wilford, Esq.
Anthony J. D'Agostino, Esq.
Sabina Danek, Esq.
Wilford LLP
18 E. Dundee Road, Building 6
Suite 150
Barrington, IL 60010
224-848-4721
224-848-5865 *facsimile*
dwilford@wilfordllp.com
adagostino@wilfordllp.com
sdanek@wilfordllp.com
*Co-Counsel for General Star National Ins. Co.*

Cindy L. Ebenfeld, Esq.
Hicks, Porter, Ebenfeld & Stein, P.A.
11011 Sheridan Street, Suite 104
Hollywood, FL 33026
954-624-8700
954-624-8064 fax
cebenfeld@mhickslaw.com
*Co-Counsel for General Star National Ins. Co.*

/s/ Stephen A. Marino, Jr.
**Stephen A. Marino, Jr., Esq.**